The **FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Glenn B. CLARK, individually and in his capacity as a partner of Hamilton, Myer, Swanson, Faatz & Clark; Hamilton, Myer, Swanson, Faatz & Clark, a Colorado General Partnership, and Robert K. Swanson, individually and in his capacity as a partner of Hamilton, Myer, Swanson, Faatz & Clark, Defendants.**

Civ. A. No. 88–F–647.

United States District Court, D. Colorado.

Oct. 10, 1989.

Gary T. Cornwell, Kent E. Hanson, Cornwell & Blakey, Denver, Colo., John Thomas, Sr. Atty., FDIC, Washington, D.C., and Todd L. Vriesman, Kirkland & Ellis, Denver, Colo., for plaintiff.

Philip A. Rouse, Jr., Kenneth Groves, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

This matter came up for bifurcated liability and damage trial during July and August of 1989. Plaintiff brings suit as assignee of the claims of a failed state bank for attorney malpractice. Plaintiff alleged the Aurora Bank's lawyers alleges negligently failed to uncover and stop an ongoing fraud perpetrated against the bank. At the conclusion of the liability phase of trial, the jury found defendants Glenn B. Clark, Jr. and Robert K. Swanson had been negligent or at fault, caused loss to the bank, and did so acting in their authority as partners of the law firm.[1] Performing proportionate fault calculations as instructed by the court, the jury found defendant Clark fourteen percent (14%) negligent or at fault, defendant Swanson five percent (5%) negligent or at fault, and employees of the bank acting within the scope of their employment thirteen percent (13%) at fault. At the conclusion of the damage trial, the jury found that the combined fault of defendants and various non-parties, designated at-fault pursuant to Colorado law, caused damages in the amount of $914,013.19. Judgment entered September 5, 1989 against defendants for the portion of total damages corresponding to their assessed proportion of fault. The matter is before the court on post-trial motions of the parties: (1) defendants' motion for judgment notwithstanding the verdict or, in the alternative motion for new trial, or to alter or amend or for relief form judgment, filed September 15, 1989, and (2) plaintiff's motion for post-trial relief including entry of judgment notwithstanding the verdict, amendment of judgment, additur, or new trial, filed September 15, 1989.

### I.

This action arises out of the failure of the Aurora Bank (the "Bank"), a state bank located in Aurora, Colorado. On November 1, 1985, the State Bank Commissioner of Colorado assumed control over the property and affairs of the Bank and appointed to the Federal Deposit Insurance Corporation (the "FDIC") receiver. The FDIC in its capacity as receiver took control of the Bank, sold the Bank, its property and its "acceptable assets" to Omnibank, Inc., and sold remaining "unacceptable assets" to the FDIC in its corporate capacity. *See FDIC v. Clark, et al.,* 88–F–647, slip op. (D.Colo. Oct. 20, 1988) (discussing details of FDIC purchase and assumption transaction designed to maintain viability of banks and the depositor insurance fund).

Among the "unacceptable assets" were the claims asserted against defendants in this action. Plaintiff alleges that in 1984, defendant attorneys and a predecessor of defendant partnership, a law firm, repre-

---

1. Defendant Hamilton, Myer, Swanson, Faatz & Clark is the successor in liability, for the purposes of this lawsuit, to the law firm of Neef, Swanson, Myer & Clark. Defendants were partners of the Neef, Swanson during the relevant time period. *See FDIC v. Clark, et al.,* Civ.A.No. 88–F–647, slip op. at pp. 17–19 (D.Colo. June 30, 1989).

sented the Bank and several of its officers in a matter known as the "*Rizzo* matter." Plaintiff brought claims for attorney malpractice arising out of that representation. Plaintiff alleged that defendants negotiated a quick settlement of the *Rizzo* matter, failed to reveal certain allegations against Bank officers to the Bank's Board of Directors, and failed to investigate those allegations to uncover a series of fraudulent transactions between the *Rizzo* plaintiffs and the officer defendants. In this action, FDIC/Corporation seeks damages resulting from defendants' negligence.

Over a several year period, the law firm of Neef, Swanson, Myer and Clark ("NSM & C") represented the Bank in most legal matters other than small collection cases. In 1984, the President of the Aurora Bank, Mr. Dennis Nowfel, conspired with others to perpetrate a series of frauds on the Bank. *See FDIC v. Antonio,* 649 F.Supp. 1352 (D.Colo.1986), *aff'd,* 843 F.2d 1311 (10th Cir.1988). During the relevant time period, defendant Glenn B. Clark served as Secretary to the Board of Directors and as counsel for the Bank on various matters. *See* Defendants' Motion for Summary Judgment, Exhibit C, Corporate Board Minutes.

In October of 1984, NSM & C and defendant Clark were served with a complaint in the *Rizzo* matter. Clark brought the complaint to the attention of the Bank's president, Nowfel, and the chairman of its Board of Directors. Nowfel discussed the complaint with Clark, denied personal allegations of fraud, conspiracy and gross negligence contained in the complaint. Nowfel informed Clark that he believed the matter was actually a means for the *Rizzo* plaintiffs to pressure non-bank defendants to pay certain loans and that the loans at issue were valid and made in accordance with Bank policies and procedures. Clark then discussed the complaint and Nowfel's characterization of it with the Chairman of the Board of Directors, Mr. Gary Whitlock. Later, at the October 18, 1984 meeting of the Board of Directors, an approach to the matter was presented to the Board, and NSM & C was retained to represent the Bank and Nowfel in those matters. After this presentation, the consensus of the Board was that the *Rizzo* matter was a nuisance suit and that NSM & C should proceed to "get rid of" of the case expeditiously. Testimony at trial indicated Clark may have been the source of this diagnosis.

Within a few days, Mr. Robert K. Swanson, Clark's partner in NSM & C, negotiated a settlement and stipulation for dismissal with plaintiffs' counsel in the *Rizzo* matter. Swanson's negotiations were based in part on documents obtained from the Bank related to the loans at issue in the *Rizzo* matter. Some of those documents were altered, probably by Nowfel, or otherwise failed to show the true status of the loans and collateral at issue in the *Rizzo* matter. By November 19, 1984, Nowfel reported to the Board of Directors that non-bank defendants in the *Rizzo* matter had made payment on loans owed the Bank and that a stipulation for dismissal of that case was being prepared. Later litigation against Nowfel and his co-conspirators revealed that the fraud alleged in the *Rizzo* complaint was then occurring and continued for some months after that case was settled. Furthermore, the loan payments Nowfel described at the Board meeting of November 19, 1984 were actually fraudulent entries on the Bank books instigated by Nowfel's submission of certain documents creating a substantial overdraft in the accounts of other depositors. When the fraud was discovered in December of 1984, Nowfel and his co-conspirator vice-president were dismissed, the Board of Directors brought in outside assistance, and the fraud stopped. Plaintiff sought damages for the period between the filing of the *Rizzo* complaint, when the lawyers should have had notice of the fraud, and the date the Board learned of the fraud.

Plaintiff brought claims for negligence and breach of implied warranties arising out of defendants' representation of the Bank in the *Rizzo* matter. Through a multitude of "defenses," some in the nature of denial, others in the nature of affirmative defense, defendants denied that their conduct amounted to malpractice and asserted further that by virtue of various theories

of agency law, the conduct of fraudfeasors who were employees of the bank was attributable to the bank and precluded recovery.

## II.

### Defendants' Motions

The focus of defendants' alternative post-trial motions is on allegations of error in the conduct of trial and the rulings of pretrial motions. Defendants fail to address the standards applicable to the variety of relief sought. Because we find no support for defendants' allegations of error, we need not determine the applicable remedy. Defendants alternative motions are DENIED in their entirety.

### A. *The Agency Defenses.*

Defendants object to the court's refusal of tendered jury instructions going to their multifaceted theory of attribution of fault and imputation of knowledge to the Aurora Bank. Essentially, defendants selectively argue principles of agency law and seek to misapply these principles in the context of this case. As we held on the parties' motions for summary judgment, agency law does not convert the fraud perpetrated against the Aurora Bank by its employees into a fraud perpetrated by the bank against its attorneys. *See FDIC v. Clark, et al.,* Civ.A. No. 88–F–647, slip op. at pp. 17–19 (D.Colo. June 30, 1989). In support of the instant motion, defendants again rely on selected portions of authorities from various jurisdictions which, when read in context, support our prior rulings on the "agency defenses." We will not revisit the substantive analysis of our ruling on summary judgment. The court instructed the jury in a manner consistent with those rulings.

### B. *Attorney Malpractice.*

Defendants also contend that the court erred in allowing plaintiff's expert witness to testify as to the conduct falling within defendants' duty of care as attorneys.

■ *First,* we have again considered and reject defendants' contention that the evidence did not support hypothetical questions posed to plaintiff's expert. The evidence supported the analysis of experts testifying on both sides. *See Flukey v. Chicago & Northwestern Transportation Co.,* 838 F.2d 302, 303 (8th Cir.1988) (whether facts support hypothetical posed to expert within discretion of trial court). The ultimate resolution of conflicting opinions and interpretation of the evidence was a matter for the jury. Defendants' contention that the expert's interpretation of the evidence was strained goes to weight afforded the expert's opinion, not its admissability.

[2–4] *Second,* plaintiffs expert did not usurp the court's function in determining whether a duty attached in the circumstances of this case. In a legal malpractice action, as in any negligence action, the court determines as a matter of law whether a duty of care exists in the circumstances. *See, e.g., Shewmake v. Badger Oil Corp.,* 654 F.Supp. 1184, 1187 (D.Colo. 1987). In denying defendants' motions to strike the testimony of plaintiffs' expert and for directed verdict during trial, the court found that the relationship between the parties gave rise to an attorney's duty to exercise reasonable care measured against the knowledge, skill and care of attorneys practicing law at the same time and in similar circumstances. Furthermore, the court found the evidence could support plaintiff's theory of what conduct the duty of care required in the circumstances. Defendants do not cite, nor does the court's own research disclose, any authority to suggest that the court must also instruct the jury on the particular manifestations of that duty of care in a legal malpractice action, as defendants' contend. *See Miami Int'l Realty Co. v. Paynter,* 841 F.2d 348, 352–53 (10th Cir.1988) (under Colorado law, expert witness provides testimony as to conduct required of practitioners in the community within general standard of care imposed by law). Notwithstanding the impropriety of instructions going beyond standard Colorado Jury Instructions on professional malpractice, defendants' tendered instructions were also re-

fused because they were inapplicable to this case. The authorities cited in support of the tendered instructions were drawn are either legal or factually distinguishable or selectively quoted by defendants.

■ *Third*, the court accepted all applicable instructions on defendants' theory of the case. A party is entitled to instructions of the law applicable to their theory of the case only if that theory is supported by the authorities and the evidence introduced at trial. *Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir.1985). A district judge has broad discretion in framing the form and language of the charge to the jury, as long as the entire charge fairly and adequately contains the law applicable to the case. *Des Moines Bd. Of Water Works Trustees v. Alvord, Burdick & Hudson*, 706 F.2d 820, 823 (8th Cir.1983). The court's instructions as to attorney malpractice and agency law fairly and adequately presented *applicable* Colorado law to the jury.

■ Defendants tendered nearly one-hundred liability phase jury instructions before trial. Counsel for plaintiffs and defendants could not agree even as to the stock instructions regarding burden of proof, jury deliberation and procedural instructions which have stood the test of time. In addition to general denials, defendants submitted proposed instructions on twenty-two "defenses" leaving it to the court to sort out and analyze a maze of theories not supported by the evidence and issues of the case. *See FDIC v. Clark, et al*, Civ.A. No. 88–F–647, slip op. (D.Colo. June 30, 1989). Few of these defenses set forth in defendants' proposed instructions were supported by the evidence. Defendants' tendered instructions presented divergent, conflicting, and predominately inapplicable theories and interpretations of the law. Defendants' decision to present a multitude of legal theories during trial, several of which had been disposed of on summary judgment, without clear delineation, placed an undue burden on court and opposing counsel to sort out (1) what theories had been raised, and (2) how those theories might apply in the context of this litigation.

Faced with such a lack of continuity, logic, or persuasive supporting authority, the court reverted to the basic structure of instructions and well codified patterned Colorado Jury Instructions. The court's ultimate instructions fairly and adequately placed the applicable law before the jury.

Although several of defendants' post-trial objections to jury instructions were not raised or articulated at trial, we have reviewed them in their entirety. To the extent defendants alternative post-trial motions turn on objections to jury instructions and special verdict forms, they are DENIED.

## C. *Designated Non-parties Stricken by the Court.*

■ Post-trial, defendants reassert their objection to the court's omission of certain non-parties from the proportionate fault portions of Special Verdict Form B, executed by the jury at the conclusion of the liability phase of the litigation. We have again considered and reject defendants assertion that the mere naming of any actor as a defendant in the prior adjudication of the fraud in a separate action supports their designation as non-parties pursuant to § 13–21–111.5 of the Colorado Revised Statutes. *See FDIC v. Clark, et al*, Civ.A. No. 88–F–647, slip op. at pp. 17–20 (D.Colo. March 25, 1989); *Id.*, slip op. at 25–26 (D.Colo. June 30, 1989). The relevant conduct in this litigation went only to a portion of the ongoing fraud litigated in *FDIC v. Antonio*, 649 F.Supp. 1352 (D.Colo.1986), *aff'd*, 843 F.2d 1311 (10th Cir.1988). As to each of the parties stricken from defendants' designation of non-parties at fault, the evidence at trial did not reflect participation or causal connection to that part of the fraud occurring after the date of defendants' adjudicated negligence. Without support for the proposition that non-parties are cotortfeasors severally responsible for the injuries alleged, the designation will not stand. *See FDIC v. Clark, et al*, Civ.A. No. 88–F–647, slip op. at pp. 17–20 (D.Colo. March 25, 1989). In this regard, defendants motion for new trial is DENIED.

D. *Apportioned Fault and Contributory Negligence.*

After the jury's liability phase verdict was returned, counsel were instructed to submit a proposed judgment reflecting the jury's verdict. The tendered forms of both plaintiffs and defendants were in the form of post-trial motions for relief from the verdict. The court reviewed the motions, found that they supported no action at that time and set trial for the damage phase of the litigation. In an attempt to avoid the page limitations imposed by the court on the instant motions, defendants merely incorporate their proposed form of judgment in support in the instant motions. We have considered and reject defendants' misinterpretation of Colorado law regarding proportionate fault.

▮▮▮▮ Defendant Swanson contends that judgment must be entered in his favor because the proportion of fault allocated to him is less than the proportion of fault allocated to plaintiff. Colorado's comparative negligence statute, Colo.Rev.Stat. § 13–21–111.5 states in part:

> Contributor negligence shall not bar recovery in any action ... if such negligence was not as great as the negligence of the person against whom recovery is sought....

In *Mountain Mobile Mix, Inc. v. Gifford,* 660 P.2d 883 (Colo.1983), the Colorado Supreme Court interpreted this language to require the combination of the fault allocated to all defendants before it is compared to the fault allocated to the plaintiff. This "combined comparison rule" only bars plaintiff's recovery if his fault is higher than the fault of all defendants combined. Accordingly, the fact that Mr. Swanson's fault alone is lower than that of the plaintiff does not require entry of judgment in his favor.

Defendants contend that the Colorado legislature's adoption of § 13–21–111.5,

which made defendants in tort actions liable only for the fault apportioned to them by the jury, overturns the Colorado Supreme Court's decision is *Mountain Mobile Mix.* However, the above quoted language relied on by the court in *Mountain Mobile Mix* was not changed.[2] § 13–21–111.5 does modify the effect of *Mountain Mobile Mix* by assuring that a defendant who is less at fault than the plaintiff will not be held responsible for more of the plaintiff's injury than the plaintiff. It does not, however, preclude such a defendant from being liable for the proportion of fault allocated to him.

▮▮▮▮ Defendants further contend that the jury's verdict is inconsistent because the proportions of fault allocated to defendants are larger than the proportions of fault allocated to some non-party tortfeasors. Defendants misinterpret applicable standards of inconsistency. *See Diamond Shamrock Corp. v. Zink & Trumbo, Ltd.,* 791 F.2d 1416, 1424–25 (10th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986). Even if we were to conclude as a matter of law that a nonparty which is found to have committed a fraud is more at fault than a party which is found to have been negligent, that conclusion would not invalidate the jury's verdict. The court's instruction, which was not objected to, required the jury to determine "to what extent the negligent conduct of defendants and the fault or negligence of the nonpart[ies] contributed to the damages of the plaintiff...." Hence, the jury was to apportion fault based not only on the levels of fault, but also the extent to which the fault caused the injury. The jury could have found that the negligence of Mr. Swanson and Mr. Clark was the cause of plaintiff's entire injury, while the fault of the non-party tortfeasors was the cause of only portions of plaintiff's injury.

---

**2.** Defendants' contention that the 1985 repeal of a portion of Colorado's comparative negligence statute, *i.e.,* Colo.Rev.Stat. § 13–21–111(3.5), overturned *Mountain Mobile Mix* is without merit. That subsection provided for proportionate fault in comparative negligence cases,

and became redundant when Colo.Rev.Stat. § 13–21–111.5 established proportionate fault in all cases. It does not address the combined comparison rule, and did not even exist when *Mountain Mobile Mix* was decided.

Defendant Swanson's motion for amended judgment in favor of defendant Swanson is DENIED.

### E. Set-off.

■ Defendants move for reduction of judgment by an amount corresponding to the amount to be recovered by the FDIC according to a settlement agreement purportedly arising out of the underlying fraud. Defendants misinterpret our prior order regarding the effect of the FDIC settlement with Acadia Savings and Loan. See FDIC v. Clark, et al., Civ.A. No. 88–F–647, slip op. at pp. 20–21 (D.Colo. June 30, 1989). In that order, we held that even if it would be appropriate to bar litigation of claims where recoveries from collateral sources wholly compensated plaintiffs for the injuries alleged, the settlement agreement in question did not mathematically amount to complete compensation. We did not hold that the settlement was in fact a collateral source of the recovery for the damages later adjudicated in this matter. Defendants present no evidence or theory to support their conclusion that the settlement represents recovery from a co-tortfeasor or goes to any of the damages litigated in this case. Without an initial demonstration that the damages plaintiff sought to recover from a settling party are common to the damages recovered from these defendants, the authority cited by defendants does not apply. See McKown–Katy v. Rego Co., 776 P.2d 1130, 1134 (Colo.1989); Greenemeir v. Spencer, 719 P.2d 710, 713 (Colo.1986); see also Kussman v. City and County of Denver, 706 P.2d 776 (Colo.1985); U.S. Indus., Inc. v. Touche, Ross & Co., 854 F.2d 1223, 1236 (10th Cir.1988).[3] At trial, neither plaintiffs nor defendants presented evidence regarding the conduct of Acadia Savings and Loan, or the property that was the subject of the litigation against that entity. Post-

trial, defendants have made no attempt to demonstrate commonality between that litigation and this litigation. Thus, the record is devoid of evidence in support of the motion for set-off. The motion is DENIED.

### III.

### Plaintiff's Motions

As described by plaintiff, the thrust of their post-trial motions is to correct judgment in two respects: (1) to enter judgment in favor of plaintiff on a contract theory of attorney malpractice and comparative fault, avoiding the abolition of joint and several liability in Colorado tort law, and (2) to enter judgment with additur to account for alleged inconsistencies and errors in the damage phase of the litigation.

### A. Contract Claim for Attorney Malpractice.

■ Plaintiff contends that its complaint properly alleges two claims for attorney malpractice, one for negligence arising in tort and one for breach of implied warranty arising in contract. Since early in this litigation, plaintiff has attempted to avoid Colorado abolition of joint and several liability. See FDIC v. Clark, et al., Civ.A. No. 88–F–647, slip op. (D.Colo. March 25, 1989) (denying plaintiff's motion to strike designation of non-parties at fault and to apply federal common law of joint and several liability). We need not revisit our analysis of Colorado law on proportionate fault in this order.

We have again considered and reject plaintiff's contention that attorney malpractice in Colorado sounds alternatively in contract and in tort.[4] First, plaintiff cites no authority from Colorado or other jurisdictions to support the proposition that attorney malpractice sounds in contract.

---

3. We note further that even if we could find that the Acadia settlement goes to common damages caused by a co-tortfeasor, defendants' proposed manner of set-off finds little support in the applicable authorities.

4. We note initially that plaintiffs theory of contract damages may have in fact been waived by

the withdrawal of damage instructions reflecting both contract and tort damage analyses and the re-tender of instructions and verdict forms geared only to the tort claim. See Fortier v. Dona Ana Plaza Partners, 747 F.2d 1324, 1337 (10th Cir.1984).

*Second,* the overlap between contract and tort in such an action is as expressed in our order on summary judgment—whether the relationship exists and for what purpose requires a general contract analysis, whether an attorney exercised the duty of care arising out of that relationship sounds in tort. *See FDIC v. Clark, et al.,* Civ.A. No. 88–F–647, slip op. at pp. 6–14 (D.Colo. June 30, 1989). *Third,* Colorado Jury Instructions and comments thereto reflect the fact that Colorado approaches breach of attorney's implied warranty of care as a hybrid of the standard tort claim for malpractice. *See* C.J.I.Civ.2d § 15:20. *Fourth,* even in jurisdictions where a separate contract claim for breach of a contract for attorney representation has been recognized, the claim must turn on a *specific* provision in the contract, which the or evidence in this case would not support, and may not be raised as a means of sidestepping the limitations placed on tort actions. *Sherman Indus, Inc. v. Goldhammer,* 683 F.Supp. 502, 506 (E.D.Pa.1988); *see also Floro v. Lawton,* 187 Cal.App.2d 657, 10 Cal.Rptr. 98, 107 (1960). *Finally,* as a general proposition, if an implied duty of care arises from the relationship between the parties irrespective of contract, the action sounds in tort. *Equilease Corp. v. State Federal Savings and Loan Ass'n,* 647 F.2d 1069, 1074 (10th Cir.1981). Plaintiff's motion to amend judgment to reflect alternative recovery under contract law is DENIED.

### B. *Miscalculation of Damages.*

■■■ Plaintiff objects to the jury's apparent deduction of certain items from plaintiff's calculation of damages in arriving at the verdict on damages. The damage issues in this case were presented to the jury during the second phase of trial through a form of special interrogatory tendered, and stipulated to, by plaintiff. The interrogatory broke out the alleged damages in six (6) categories related to loans and checking accounts from the Aurora Bank. *See* Special Verdict Form C. Two of the items plaintiff contends to have been wrongfully deducted fell within the jury's award of $419,013.19 for overdrafts

in the Swiss American Ltd. Account. Although the verdict returned tracks defendants' calculation of damages as presented in exhibit C–12, the apparent adoption of defendants' position remains speculative because the jury was not specifically asked whether it had awarded damages for certain items within. *See Fortier v. Dona Ana Plaza Partners,* 747 F.2d 1324, 1337 (10th Cir.1984) (failure to submit issues for presentation to the jury amounts to waiver of right to separate determination). Furthermore, while plaintiff contends that one of these items demonstrates fatal inconsistency between the verdicts of the liability phase and those of the damage phase, the objection was not adequately preserved at trial. Plaintiff's failure to seek resubmission of the alleged inconsistency prior to discharge pursuant to Rule 49(b) of the Federal Rules of Civil Procedure may amount to waiver of the current objection. *See Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.,* 791 F.2d 1416, 1423 (10th Cir.), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986). Nonetheless, we have considered and reject each of plaintiff's allegations of error in the damage phase of trial.

### 1. The Rizzo/Del Vecchio Loans.

During the liability phase of trial, the jury found designated non-parties Rizzo and Del Vecchio were each three percent (3%) at fault in causing the alleged losses to the bank. If the jury in fact adopted defendants' calculation of damages, then the jury did not award damages for loans to these individuals totaling some $362,000 as an additional item of damage under the losses attributable to the Swiss American Ltd. account overdraft. *See* Exhibit C–12. Plaintiff contends these verdicts are inconsistent because the only losses to which these two non-parties could have contributed were the loans taken in their names.

■■■ *First,* we have considered and reject plaintiff's interpretation of the evidence. The evidence showed the Messrs. Rizzo and Del Vecchio brought the suit against the bank out of which defendants' negligence arose to avoid payment on these

very loans. The evidence can be read to reflect that the money loaned left the bank prior to the filing of that lawsuit. Accordingly, the jury could have found that the loans amounted to damages suffered by the Aurora Bank prior to the time defendants could have stopped the ongoing fraud. Furthermore, the evidence at trial also demonstrated that the participating fraudfeasors, including Messrs. Rizzo and Del Vecchio, furthered the fraud upon settlement of their lawsuit by altering bank documents to reflect payments never actually made on the loans but simply charged to the Swiss American Account. Under the terms of the settlement, the signatory of the Swiss American Account, a co-defendant of the bank in the *Rizzo* matter, was responsible for paying off the two loans. The jury could have found Messrs. Rizzo and Del Vecchio at fault for participating in an under the table resolution of the matter which prevented further litigation and disclosure of information of the fraud and allowed it to continue unbeknownst to the Board. Where there is a view of the case which makes the jury's verdict consistent, the court must adopt that view and enter judgment accordingly. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 6, 9 L.Ed.2d 618 (1963); *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1545 (10th Cir.1987).

■ *Second,* we have considered and reject plaintiff's contention that the alleged inconsistency is attributable to wrongful relitigation of causation during the damage phase of trial. Plaintiff's view of the damage phase speculates that the jury adopted its definition of the loss caused by defendants and designated non-parties during the liability phase and that defendants should have been precluded from presenting any evidence that the specific items alleged *not* were caused by that fault during the damage phase. Plaintiff's observations are misplaced. Although causation is a necessary element of proving liability for loss, items of damage awarded must also bear some causal connection to the conduct to which liability attaches. *See* Plaintiff's Proposed Jury Instruction 18 (damages are losses incurred "as a result of" defendant's

negligence). Our rulings and jury instructions are consistent with the view that plaintiff may not be compelled to litigate causation as a separate element of the tort during the damage phase, or to meet allegations of intervening cause to the suffering of loss. During the damage phase of a bifurcated trial, however, plaintiff must present some evidence causally linking the damages alleged to the negligence of defendants.

■ *Third,* the defense of mitigation of damages turns on causation. *See* C.J.I.3d § 5:2. Defendants litigated intervening cause during the first phase by arguing the conduct of bank employees Debbie Albritton and Louise Hughes amounted to an unreasonable failure to address significant bookkeeping and banking improprieties which would have alerted the Board of Directors of the fraud. During the liability phase, the jury found these two employees were not at fault in causing the original loss. A large part of the evidence regarding the conduct of these employees went to the time period after the *Rizzo* matter was mishandled by defendants. Nothing precludes the jury from reconsideration of this evidence during the damage phase on proper instructions of mitigation of damages. It was not error to allow defendants' expert to testify about the state of Aurora bank records and the failure of bank employees to act on those records during the relevant time period after the occurrence of defendants' negligence. *See also FDIC v. Clark, et al.,* Civ.A. No. 88–F–647, slip op. at pp. 21–23 (D.Colo. June 30, 1989) (discussing affirmative defense of failure to mitigate). Because these employees were found *not* to be at fault during the first phase, we reject plaintiff's contention it has suffered double reduction by way of proportionate fault and mitigation of damages.

#### 2. Napoli, Jr. Loan.

We have also considered, and for the reasons set forth above regarding causation and mitigation of damages, reject plaintiff's contention that the jury erroneously awarded no damages on the $80,000 loan advanced to John R. Napoli, Jr. on

October 29, 1984. The loan was not entered on the books of the bank until December 14, 1984. The various bookkeeping improprieties addressed at trial in regard to this loan could easily have been attributed to the misconduct of bank employees not previously found to be co-tortfeasors to defendants. Thus, it is possible that the jury refused to award damages on the loan for failure to mitigate damages.

### 3. Loan Participation Agreements.

A significant legal and factual dispute arose at trial regarding the significance of two loan participation agreements executed in relation to the Swiss American Ltd. account overdraft. Testimony at trial demonstrated that bank employees decided to address an overdraft in the account of over one million dollars by converting the overdraft to a loan in the name of the account signatory, Heinrich Rupp. The evidence reflected the purpose of the participation agreements was to sell portions of the debt owed the Aurora Bank in order to lessen the debt load of the bank to comport with statutory limitations.

■ On motion in limine, during trial, and again post-trial, plaintiff contends that the loan participations are a collateral source. We again hold that loan participations are not analogous to insurance or other loss shifting agreements which fall within the Colorado collateral source rule. *See* Colo.Rev.Stat. § 13–21–111.6. Loan participations are a sale of assets, the right to collect on a loan or a portion thereof to another lender. They do not shift loss, but risk of loss. The Aurora Bank received income from the participating banks in exchange for the right to moneys received on the loan. *See McVay v. Western Plains Service Corp.*, 823 F.2d 1395, 1398–99 (10th Cir.1987).

■ Alternatively, plaintiffs contend that the participation agreements are clear and unambiguous on their face and require the court to determine and instruct the jury on their legal effect. *See Matter of May*, 756 P.2d 362, 369 (Colo.1988). We have again considered and reject plaintiff's allegation of error in this respect. *First*, the loan documents are not clear and unambiguous on their face. For example, the documents enumerate options for the selection of a loan repayment plan, but one of the loan agreements does not include indication of which alternative applies. *See* Exhibit C–5 at p. 3. *Second*, plaintiff argued one interpretation in their damage phase trial brief, another at trial, and a third post-trial. And *third*, the conflicting testimony of banking experts suggests that in actual banking practice, and especially in this case, the documents do not reflect the manner in which these loan agreements were in fact treated by the parties. Thus, had the issue in fact been one of contract interpretation, the matter would have been one of fact for presentation to the jury. *See Amoco Production Co. v. Western Slope Gas Co.*, 754 F.2d 303 (10th Cir.1985). The record at trial demonstrates that the issue was not merely one of contract interpretation, however, but a determination of whether the losses alleged were losses suffered by the Aurora bank. Based on the testimony regarding loan participations in general and the execution of these participations specifically, we are not persuaded that the jury should have been instructed as a matter of law that the participation did or did not represent an item of loss.

■ Finally, we have considered and reject plaintiff's contention that the court erroneously excluded evidence of the effect of a settlement agreement between the FDIC on behalf of the Aurora Bank and the participating banks on the loan participation agreements. Plaintiff contends the jury was left with a misperception of the settlement by testimony of defendants' expert. The accounting effect of the settlement agreement was clearly delineated by experts and witnesses called by plaintiff and defendants. The effect was subject to different interpretations by damage experts on both sides. The only evidence excluded was that of the settlement agreement itself (tendered exhibit 169) and the testimony of an FDIC employee regarding his interpretation of the settlement.[5] The

5. See description of the case giving rise to the settlement set forth in footnote 6 following.

employee was not an attorney or accountant. The evidence was excluded as injecting collateral matters into the case and that the evidence was more confusing than probative. See Rule 403 of the Federal Rules of Evidence. An inordinate amount of time would be necessary to delve into the many facets of the settlement of this confusing case giving rise to the settlement. Cursory review of the court file reflects numerous contentions of the parties and substantial theories of recovery. As noted, substantial court time would be necessary to afford adequate review time of points of issue. It is interesting that the same individual signed the settlement agreement on behalf of FDIC in all three of its capacities. The evidence presented on the FDIC's offer of proof on the issue simply raised more questions than it answered regarding the settlement and any transfer of funds thereunder. For example, the settlement agreement was reached between the FDIC in one capacity and the FDIC in another capacity.[6] An inordinate amount of testimony would have been necessary to address the potential confusion and would have left the jury with the same conflict in the evidence. One witness, an accountant, testified that the loan participations constituted evidence that the bank had not suffered the $400,-000 loss alleged, the other testified that in his opinion the loan participations should not be considered in that vein. He differed in his interpretation of the agreement. Thus, the issue was clearly before the jury on a contested point. The court has the responsibility to control introduction of evidence that injects collateral issues into the case, or matters that would confuse the jury and not be helpful on the point involved. The rejected testimony and exhibit is of this caliber.

Accordingly, even if we were to speculate that the jury had adopted defendants' calculation of damages and deducted $400,-000 from its award on the Swiss American Ltd. account because the overdraft had been subject to loan participation agreements, our rulings on the issue did not prejudice plaintiff. The evidence presented at trial would support the conclusion that the loss was suffered by the participating banks and not the Aurora Bank and that the Aurora Bank received $200,000 for the sale of these assets.

Plaintiff's motion for additur to correct miscalculation of damages or, in the alternative, for new trial on damages, is DENIED.

## IV.

### Prejudgment Interest

■ Colorado law provides for the awarding of prejudgment interest in a tort action for property damage. Colo.Rev. Stat. § 5–12–102; *Isbill Assoc. v. City and County of Denver*, 666 P.2d 1117, 1121–22 (Colo.App.1983). This authority is binding on the federal district court. *Lowell Staats Mining Co. v. Pioneer Uravan Inc.*, 878 F.2d 1259, 1268–70 (10th Cir. 1989). At the beginning of the damage phase, the court denied defendants' motion to strike plaintiff's claim for prejudgment interest. Defendants reassert the motion post-trial to amend judgment. The motion is DENIED.

■ Our previous ruling on prejudgment interest also addressed plaintiff's contention that the court failed to make essential findings in awarding interest at the statutory rate, as opposed to the higher rate included in plaintiff's damage calculation. The Colorado statute permits the court, in its discretion, to award interest at

---

**6.** The case is titled *FDIC as receiver for Market National Bank; and FDIC in its corporate capacity v. FDIC as receiver for the Aurora Bank; Dennis L. Nowfel, John Does 1–15; and Gary Whitlock*, No. 87–K–656, United States District Court, District of Colorado. The Settlement Agreement in the initial paragraph states: "This SETTLEMENT AGREEMENT dated July ——, 1987, is made by and among FEDERAL DEPOSIT INSURANCE CORPORATION, in its corpo-

rate capacity (FDIC/Corporate), as successor to Commonwealth National Bank, FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for MARKET NATIONAL BANK (FDIC/Market) and FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for THE AURORA BANK (FDIC/Aurora). The case file is voluminous, multi-party and multi-faceted

a rate above the statutory rate of eight percent (8%) if plaintiff presents evidence demonstrating "gain or benefit realized by the party wrongfully withholding such money." Colo.Rev.Stat. § 5–12–102(1)(a). Where there is no proof of gain from the wrongful retention of money, the trial court should award prejudgment interest at the statutory rate. *Chaparral Resources, Inc. v. Monsanto Co.,* 849 F.2d 1286, 1291 (10th Cir.1988).

■ Plaintiff's theory of damage at trial was that certain uncollected loans would not have been made had defendants acted with the requisite care in their representation of the bank. Plaintiff's theory of prejudgment interest is that the rate of interest at which those loans were made is evidence of the benefit or gain realized by the fraudfeasors. The uncollectible loans that the jury awarded as damages include interest at the prime rate plus one to three percent (1%–3%). Plaintiff contends this interest rate is evidence of benefit or gain falling within the statute.

The morning of trial, the court made two rulings on prejudgment interest. *First,* we held that because statutory prejudgment interest in Colorado is a codification of the equitable remedy of moratory interest, the issue is one for the court and not for the jury. *See Lowell Staats Mining Co. v. Pioneer Uravan Inc.,* 878 F.2d 1259, 1268–69 (10th Cir.1989); *Davis Cattle Co. v. Great Western Sugar Co.,* 393 F.Supp. 1165, 1194–95 (D.Colo.1975), *aff'd,* 544 F.2d 436 (10th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). *Second,* we held that plaintiff's theory of prejudgment interest, detailed in pleadings filed in response to defendants' motion to strike and in plaintiff's trial brief, would not support a finding of gain or benefit within the statute.

■ In their post-trial motion, plaintiffs contend that the court erred in simply placing their offer of proof on prejudgment interest on the record and refusing to hear further testimony. The offer of proof and proposed testimony went solely to the theory previously reviewed and refused prior to the commencement of the damage trial.

The Colorado statute turns on the equitable proposition that a defendant who wrongfully withholds money is not entitled to profit from that wrong by recovering interest from investment or other sources which exceeds the statutory rate. *Davis Cattle Co.,* 393 F.Supp. at 1194–95. Thus, only evidence of the gain or benefit to the guilty party *before the court* supports a finding of interest at a rate other than that set by statute. Although the jury found that these defendants caused loss to the bank in failing to take action which would have put an end to further fraudulent loans, the evidence does not support a finding that *these* defendants wrongfully withheld bank funds. The relevant inquiry is not what interest based profit the bank would have earned had loans been made to customers who intended to pay the loans plus interest, but the profit earned by the tortfeasor before the court. The record is devoid of any evidence regarding the gain or benefit to defendants by their negligence. Plaintiff's theory of gain or benefit will not support a factual finding of interest under Colorado Revised Statute § 5–12–102(1)(a).

Accordingly, plaintiffs motion to amend judgment to reflect interest at a rate established by the loan agreements is DENIED. Absent evidence of gain or benefit to defendants, the court may not award interest above the eight percent (8%) rate established by statute. *Isbill Assoc. v. City and County of Denver,* 666 P.2d 1117, 1121–22 (Colo.App.1983); *Chaparral Resources, Inc. v. Monsanto Co.,* 849 F.2d 1286, 1290 n. 4 (10th Cir.1988). As to prejudgment interest, judgment reflects the courts findings at trial and is AFFIRMED.

## ORDER

IT IS HEREBY ORDERED that Defendants' Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial or to Alter or Amend or Motion for Relief From Judgment, filed September 15, 1989, is DENIED; it is further

ORDERED that Plaintiff's Motion for Post–Trial Relief, filed September 15, 1989, is DENIED; it is further

ORDERED that the jury's verdicts and judgment entered thereon on September 5, 1989 is AFFIRMED. All post trial Motions are DENIED. Taken individually or in their totality, the Motions and Briefs do not support any post-trial Motions and are thereby DENIED.