RESOLUTION TRUST CORPORATION, a corporate instrumentality of the United States of America, Plaintiff,

v.

Richard D. HEISERMAN, individually and as a general and limited partner in Heiserman Family Partners, Ltd., and as a grantor, trustee and beneficiary of Heiserman Family Trust; Walter C. Kane, Guy E. Boyer, David G. Marberry, John C. Root, Charles R. Babb, James D. Grow, John B. Howell, Chester A. Latcham, Jr., individually and as a general and limited partner in Latcham Family Partners, Limited, and as a grantor, trustee and beneficiary of Latcham Family Trust; William T. McCallum, individually, and as a general and limited partner in McCallum Family Partners, Ltd., and as a grantor, trustee and beneficiary of McCallum Family Trust; James C. Shearon, individually and as a general and limited partner in JCS Family Partners, Ltd., and as a grantor, trustee and beneficiary of JCS Family Trust; Heiserman Family Partners, Ltd., a limited partnership; Patricia A. Heiserman, as a general partner and limited partner in Heiserman Family Partners, Ltd.; John Does One and Two, as other unknown general and limited partners of Heiserman Family Partners, Ltd.; Heiserman Family Trust; Richard L. Smith, as a trustee of Heiserman Family Trust; John Does Three and Four, as other unknown trustees and beneficiaries of Heiserman Family Trust; Latcham Family Partners, Limited, a limited partnership; John Does Five and Six, as other unknown general and limited partners of Latcham Family Partners, Limited; Latcham Family Trust; John Does Seven and Eight, as other unknown trustees and beneficia- ries of Latcham Family Trust; McCallum Family Partners, Ltd., a limited partnership; Leslie A. McCallum, as a general partner and limited partner in McCallum Family Partners, Ltd.; John Does Nine and Ten, as other unknown general and limited partners of McCallum Family Partners, Ltd.; McCallum Family Trust; John D. Clayton and Alan D. MacLennan, as trustees of McCallum Family Trust; John Does Eleven and Twelve, as other unknown trustees and beneficiaries of McCallum Family Trust; JCS Family Partners, Ltd., a limited partnership; Carol M. Shearon, as a general partner and limited partner in JCS Family Partners, Ltd.; John Does Thirteen and Fourteen, as other unknown general and limited partners of JCS Family Partners, Ltd.; JCS Family Trust; John Does Fifteen and Sixteen, as other unknown trustees and beneficiaries of JCS Family Trust; Engel & Rudman, P.C., a Colorado professional corporation; Barry S. Engel, personally and as a shareholder in Engel & Rudman, P.C.; Ronald L. Rudman, personally and as a shareholder in Engel & Rudman, P.C.; John Does Seventeen and Eighteen, as other unknown shareholders in Engel & Rudman, P.C.; Carolyn P. Boyer; and Nancy A. Marberry; Defendants.

Civ. A. No. 93–B–944.

United States District Court, D. Colorado.

June 16, 1994.

John M. Kobayashi, Kathleen M. Kulasza, Linda J. Creagan, Kobayashi & Associates, P.C., Jeremiah B. Barry, Staff Atty., Resolution Trust Corp., Denver, CO, for plaintiff.

Charles F. Brega, Wesley B. Howard, Brega & Winters, P.C., Denver, CO, for defendant Charles R. Babb.

Kevin D. Allen, Margaret M. McClellan, Vinton, Waller, Slivka & Panasci, Denver, CO, for defendants Patricia A. Heiserman and Richard L. Smith.

William J. Leone, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, CO, for defendant Chester A. Latcham.

James R. Cage, Berryhill, Cage & North, P.C., Denver, CO, for defendant James D. Grow.

James D. Grow, pro se.

Jeffrey M. Villanueva, Steven M. Feder, Bader & Villanueva, P.C., Denver, CO, for defendant Engel & Rudman, P.C.

David & Nancy Marberry, pro se.

James C. Shearon, pro se.

Michael A. Williams, Amy L. Benson, Williams, Youle & Koenigs, P.C., Denver, CO, for defendant William T. McCallum.

Alan W. Anderson, Rothgerber, Appel, Powers & Johnson, Denver, CO, for defendant John B. Howell.

Jon F. Sands, William A. Bostrom, Bostrom & Sands, P.C., Denver, CO, for defendant Gary E. Boyer.

Alvin M. Cohen, Roos, Cohen & Long, P.C., Denver, CO, for defendant John C. Root.

Victor F. Boog, Bradley, Campbell, Carney & Madsen, Golden, CO, for defendant Walter C. Kane.

Richard D. Heiserman, pro se.

Stephen L. Waters, Robinson, Waters, O'Dorisio and Rapson, P.C., Denver, CO, for defendant Shearon Companies.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Pending motions in this case require resolution of two questions of law:

1) whether Colorado's proportionate liability statute, § 13–21–111.5, 6A C.R.S. (1987), applies in this case; and,

2) whether persons can "consciously conspire and deliberately pursue a common plan or design" to be negligent and, therefore, be subject to joint and several liability under § 13–21–111.5(4), 6A C.R.S. (1987).

These questions have been adequately briefed and oral argument will not materially aid their resolution. For the reasons set forth below, I conclude that Colorado's proportionate liability statute applies in this case. I reject the RTC's contention that a federal common law rule of joint and several liability applies to any judgments obtained against the defendants. As for the second question, which can potentially negate my previous conclusion, two different panels of the Colorado Court of Appeals have considered this issue and reached opposite conclu-

sions. Consequently, I decline to rule on the second question and will certify it to the Colorado Supreme Court for consideration pursuant to C.A.R. 21.1.

### I.

The Resolution Trust Corporation (RTC), in its corporate capacity, brings this action against former directors and officers (D & O defendants) of Capitol Federal Savings and Loan Association of Denver (Capitol Federal), a failed federally insured thrift. RTC alleges negligence, negligence *per se,* gross, willful and wanton negligence, and breach of fiduciary duty of care by the D & O defendants in connection with Capitol Federal's issuance and management of loans resulting in the thrift's insolvency and failure. RTC also asserts claims against certain D & O defendants and their assigns for breach of the fiduciary duty of loyalty alleging diversion of Capitol Federal funds to pay personal legal fees to establish limited partnerships and trusts to shelter their personal assets from creditors when Capitol Federal's failure was imminent. RTC seeks to set aside these transfers or recover their value. Finally, RTC seeks to recover legal fees from the law firm of Engel & Rudman, P.C. and certain of its attorneys (collectively Engel & Rudman) together with other damages caused by the alleged fraudulent transfers. The claims against Engel & Rudman include breach of fiduciary duty, aiding and abetting breach of fiduciary duty, professional negligence, and negligent misrepresentation. RTC does not allege that Engel & Rudman in any way contributed to Capitol Federal's insolvency or failure.

This action is under the laws of the United States, including 12 U.S.C. § 1441a(b) and 12 U.S.C. § 1821(k). Jurisdiction is pursuant to 12 U.S.C. § 144a(*l*)(1) and 28 U.S.C. §§ 1331 and 1345. Pendent jurisdiction exists over the state law claims.

### II.

This issue of joint and several liability where RTC is a party plaintiff was first raised before me in *Resolution Trust Corporation v. Ascher, et al.,* Civil Action No. 92–B–424. On February 14, 1994, I entered an order, 1994 WL 52687, in *Ascher* recognizing the applicability of joint and several liability under principles of federal common law and under § 13–21–111.5(4), an exception to Colorado's proportionate liability statute. Subsequently, the *Ascher* defendants moved for reconsideration of this issue. Almost simultaneously, the defendants in this case asked me to reconsider this question in conjunction with their designation of non-parties at fault under § 13–21–111.5(3)(b). By order dated February 25, 1994, I withdrew that portion of the *Ascher* order addressing the joint and several liability issue and directed the parties in both cases to brief the issue.

### III.

It is undisputed that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) contains no direction whether the RTC may impose joint and several liability against persons responsible for thrift losses and failures. Nevertheless, the RTC contends that the imposition of joint and several liability in this case furthers FIRREA's underlying purposes and, therefore, is appropriate under the federal common law. However, such a ruling would effectively preempt Colorado's proportionate liability statute. *See* § 13–21–111.5. The Colorado statute abolishes joint and several liability in tort cases and allows defendants to designate non-party tortfeasors. *Federal Deposit Ins. Corp. v. Clark,* 978 F.2d 1541, 1551 (10th Cir.1992); *see* § 13–21–111.5(3) The statute places the burden on the plaintiff, if it seeks full recovery, to pursue claims against all parties responsible for its injuries.

The RTC, relying on *Pacific Gas & Electric v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), contends that in this case, state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and, therefore, federal law must preempt state law. The RTC further argues that a federal common law rule is needed to supersede Colorado's conflicting proportionate liability statute. In light of the Supreme Court's recent decision in *O'Melveny & Myers v. Federal Deposit Ins. Corp.,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (addressing the application of federal common law in cases brought by

the FDIC), these arguments are without merit.

The Court in *O'Melveny* began its analysis by stating that "There is no federal general common law". *Id.* at ——, 114 S.Ct. at 2053. In determining whether California law was displaced by a federal common law rule, the Court held:

> ... we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumable left subject to the disposition provided by state law.

*Id.* at ——, 114 S.Ct. at 2054. As a precondition for recognition of a federal rule of decision, a significant conflict must exist between some federal policy or interest and the use of state law. *O'Melveny* at ——, 114 S.Ct. at 2054–55 (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966)). Such cases are few and restricted. *Id.* Since FIRREA contains no provision as to whether the RTC may obtain joint and several judgments against persons held liable for the thrift's losses, under the *O'Melveny* analysis, I begin with the presumption that Colorado law controls this issue. As for any conflict between FIRREA's objectives and the use of Colorado's proportionate liability statute, the clash is minimal at best.

■ To determine whether a federal common law rule is needed to supersede conflicting state law, I apply the three-part test enunciated in *U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979); *see also Federal Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466, 1474 (10th Cir.1990), *cert. denied*, 499 U.S. 904, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991). Under *Kimbell*, I must determine whether the federal program, which by its nature is and must be uniform throughout the nation, necessitates formulation of controlling federal rules. *Kimbell*, 440 U.S. at 728, 99 S.Ct. at 1458–59. Next, apart from uniformity, I must consider whether application of state law would frustrate specific objectives of the federal program. If so, I must fashion special rules solicitous of those

federal interests. *Id.* Finally, I must consider the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. *Id.* at 729, 99 S.Ct. at 1459.

■ I and other federal courts have recognized the strong federal policy evidenced under the FIRREA provisions to enable the Federal Deposit Insurance Corporation (FDIC) to pursue the recovery of the losses of failed banks. *See, e.g., Federal Deposit Ins. Corp. v. Isham*, 777 F.Supp. 828, 831 (D.Colo.1991); *Federal Deposit Ins. Corp. v. Nihiser*, 799 F.Supp. 904, 908 (C.D.Ill 1992). However, the imposition of a uniform rule of joint and several liability on culpable directors, officers and legal advisors is not critical to the RTC's efficient recovery. Colorado's proportionate fault statute is sufficient to meet FIRREA's goals. Section 13–21–111.5 merely shifts from a defendant to the injured plaintiff the burden of collecting an absent joint tortfeasor's proportionate share of damages. *See Williams v. White Mountain Const. Co., Inc.*, 749 P.2d 423, 429 (Colo.1988); *Federal Deposit Ins. Corp. v. Clark*, Civil Action 88–F–647, 1989 LEXIS 17556, at *16 (D.Colo. March 23, 1989). The statute does not preclude the RTC from full recovery on an assigned claim. *Clark*, 1989 LEXIS 17556, at *16. The RTC may recover full damages either by joining designated non-parties in the primary action or by subsequent litigation of its claims against those joint tortfeasors. *Id.; see* § 13–21–111.5. Furthermore, while uniformity of law may facilitate the RTC's nationwide litigation by eliminating state-by-state research and reducing uncertainty, this consequence fails to qualify as a identifiable federal interest requiring the imposition of a federal common law rule. *O'Melveny*, —— U.S. at ——, 114 S.Ct. at 2054–55. Accordingly, I conclude that the effect of Colorado's proportionate liability statute on FIRREA's goal of full recovery is minimal, *Id.* at ——, 114 S.Ct. at 2055–56, and does not necessitate the formulation of a uniform national law of joint and several liability.

Second, Colorado's proportionate liability statute does not unduly increase the complexity, time, or cost of the RTC's actions against the parties allegedly responsible for the bank's failure. RTC's evaluation of

claims under the Colorado statute implicates minimal adjustment to the procedures its auditors already apply to tort claims across the nation. At most, its auditors would be required to consider the net worth of all joint tortfeasors rather than those selected few.

Third, applications of joint and several liability where a failed savings and loan is involved impermissibly interferes with commercial relationships predicated on Colorado law. For example, legal service providers, such as Engel & Rudman, agreed to provide its services with the understanding that it would be liable only to the extent of its own tortious conduct. Imposing a national uniform rule of joint and several liability in this instance would, at a minimum, discourage these private service providers from assisting a financial institution for fear that it might someday fail. Similarly, potential bank board members, officers and employees may decline to provide their services.

Case law in this circuit further convinces me that Colorado's proportionate liability statute applies here. The Tenth Circuit's decision in *Federal Deposit Ins. Corp. v. Clark*, 978 F.2d 1541 (10th Cir.1992), and its underlying decisions, *Federal Deposit Ins. Corp. v. Clark*, 768 F.Supp. 1402 (D.Colo. 1989), and *Federal Deposit Ins. Corp. v. Clark*, Civil Action 88–F–647, 1989 LEXIS 17556 (D.Colo. March 23, 1989) support this conclusion. In *Clark*, the FDIC sued the failed bank's attorneys for negligence and breach of implied warranty of professional capacity and ability. The Tenth Circuit held that the trial court properly apportioned damages under Colorado's proportionate liability statute. *Clark*, 978 F.2d at 1552. In reaching its conclusion, the court noted that the trial court had rejected the FDIC's attempt to avoid Colorado's abolition of joint and several liability. *Id.* Although the Tenth Circuit did not directly address RTC's argument here that joint and several liability should be imposed under the federal common law, that issue was squarely considered in the trial court. *See Clark*, 1989 LEXIS 17556, at *15–24 (denying FDIC's motion to strike designation of non-parties at fault and rejecting its request to apply federal common law of joint and several liability).

Furthermore, a district court in Kansas, relying on the Tenth Circuit's decision in *Clark*, held that Kansas' proportionate fault law applies to FDIC suits against officers and directors of a failed institution. *Federal Deposit Ins. Corp. v. Benjes*, 815 F.Supp. 1415 (D.Kan.1993). In support of its conclusion, the court stated: "our decision to apply the Kansas comparative fault statute in this case is consistent with the application of the Colorado proportionate liability statute in *Clark* that was implicitly approved by the circuit court". *Id.* at 1420.

The RTC contends, however, that a federal common law rule of joint and several liability should be imposed here as this case concerns federal causes of action. This argument is without merit because, other than the RTC's claim for gross negligence, all of its claims are state law based. *See Resolution Trust Corp. v. Heiserman*, 839 F.Supp. 1457, 1462 (D.Colo.1993); *see generally Federal Deposit Ins. Corp. v. Canfield*, 967 F.2d 443 (10th Cir.), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992) (FIRREA, 12 U.S.C. § 1821(k), establishes a national uniform minimum standard of gross negligence for management of a financial institution and also contains a savings clause which enables the RTC to bring claims for a higher standard of negligence, ordinary negligence, if such claims are allowed under state law). Furthermore, earlier in this case, based on RTC's arguments grounded in Colorado law, I denied the defendants' motion to dismiss RTC's claims for negligence, negligence *per se*, and breach of fiduciary duty because the bank officers and directors may be held liable for simple negligence *under Colorado law*. *Id.* at 1464; *see also O'Melveny*, —— U.S. at —— – ——, 114 S.Ct. at 2052–56 (a California rule of decision, rather than a federal rule governs the law firm's liability to the FDIC).

Next, the RTC contends that, at a minimum, a federal common law rule of joint and several liability applies to its gross negligence claim which is based entirely on federal law. However, the RTC offers no legal authority to support imposition of joint and several liability for its gross negligence claim. It simply argues that there is no impediment to the application of such a rule to these federal claim. Absent reasoned legal precedent, I decline to impose a federal

common law rule of joint and several liability for RTC's gross negligence claim while applying Colorado's proportionate liability statute to its state law claims. And, as previously stated, the *O'Melveny* decision and the *Kimbell* test fail to support the RTC's position.

Accordingly, a federal common law rule of joint and several liability will not be imposed where, as here, the RTC brings an action under FIRREA against a bank's officers, directors and legal advisors. The defendants will be held responsible, if at all, only to the extent of their individual liability as set forth in Colorado's proportionate liability statute.

### IV.

Alternatively, the RTC contends that the directors and officers can be held jointly and severally liable pursuant to § 13–21–111.5(4), 6A C.R.S. (1987) because the defendants pursued a common plan to commit negligent acts. In § 13–21–111.5(4), the Colorado General Assembly enacted an exception to its general proscription of joint and several liability in § 13–21–111.5. Section § 13–21–111.5(4) provides in relevant part:

Joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act.

To support its proposition, RTC relies on *Schneider v. Midtown Motor Co.*, 854 P.2d 1322 (Colo.App.1992), *cert. denied*, June 21, 1993. In *Schneider*, one panel of the Colorado Court of Appeals determined that a tacit agreement to commit negligent entrustment of a car could be inferred from the circumstances of defendant car dealer's repeated sale of cars, at a discounted price, to an unlicensed motorist who was known to be a "crazy driver". The court held that these circumstances support joint and several liability under § 13–21–111.5(4). *Schneider*, 854 P.2d at 1326–1327.

In opposition, the defendants argue that, as a matter of law, there can be no conspiracy to commit a negligent act under § 13–21–111.5(4). They point to *Messler v. Phillips*, 867 P.2d 128 (Colo.App.1993), where a separate panel of the Colorado Court of Appeals

held that it is impossible to "conspire" to be negligent and, thus, joint and several liability cannot be imposed pursuant to § 13–21–111.5(4). *Id.* at 135. Consequently, there is a split of authority in the Colorado Court of Appeals as to whether it is possible, as a matter of law, to "conspire to be negligent" and, therefore, be held liable jointly and severally under § 13–21–11.5(4). The Colorado Supreme Court has not yet addressed this issue.

Under C.A.R. 21.1, the Colorado Supreme Court may answer questions of law certified to it by the United States District Court, when requested:

... if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

Here, resolution of this question drives significant aspects of this case. It affects discovery, relevancy determinations, trial preparation, trial conduct including jury instructions, application of Colorado's non-party tortfeasor statutes, and, of course, the amount of final judgment, if any, against each defendant. Incorrect determination of this issue now will result in a new trial at substantial expenses to all parties. Under these circumstances, I will grant the defendants' request to certify this question to the Supreme Court of Colorado and stay this action pending resolution of this determinative question.

Accordingly, it is ORDERED that:

1) Colorado's proportionate liability statute is not preempted by a federal common law rule of joint and several liability;

2) The following question shall be certified to the Colorado Supreme Court pursuant to C.A.R. 21.1:

a) whether persons can "consciously conspire and deliberately pursue a common plan or design" to be negligent and, therefore, be subject to joint and several liability under § 13–21–111.5(4), 6A C.R.S. (1987);

3) The defendants shall jointly submit a proposed form of certification order on or before July 5, 1994;

4) The RTC shall submit any and all objections to the defendants' proposed form of certification order on or before July 15, 1994.