**RESOLUTION TRUST CORPORATION, as Receiver of Sentinel Savings & Loan Association and Sentinel Federal Savings & Loan Association, Plaintiff,**

v.

**James A. BLASDELL, et al., Defendants.**

**No. CIV–93–0199–PHX–RCB.**

United States District Court, D. Arizona.

Aug. 1, 1993.

Denis F. Shanagher, Preuss, Walker & Shanagher, San Francisco, CA, Sandra L. Slaton, Slaton Law Offices, Phoenix, AZ, Jonathan K. Cook, Resolution Trust Corp., Legal Div., Denver, CO, for Resolution Trust.

William J. Maledon, W. Scott Bales, Scott W. Rodgers, Meyer, Hendrick, Victor Osborn & Maledon, Phoenix, AZ, for defendants Campbell.

Peter D. Baird, Karen C. Owens, Karl C. Eppich, Lewis and Roca, Phoenix, AZ, for Jennings, Strouss & Salmon.

Randall S. Yavitz, Sacks, Tierney & Kasen, Phoenix, AZ, for Nancy Dennerline.

Michael S. Dickes, in pro. per.

Sheila L. Dickes, in pro. per.

Peter K. Rosen, Los Angeles, CA, for Director Defendants Blasdell, Charles, Corbin, Eaton, Hazelett, Lynch, Refsnes and Was.

## ORDER

BROOMFIELD, District Judge.

This matter comes before the court to resolve a motion to dismiss, two motions to

strike, and two motions for more definite statements.

In this action, plaintiff Resolution Trust Corporation ("RTC") alleges negligence, negligence per se, gross negligence, breach of fiduciary duty, and spousal liability, against various elected directors or appointed officers of Sentinel Savings & Loan Association ("Sentinel") and their spouses, and the law firm of Jennings, Strouss & Salmon ("Jennings Strouss"), which performed various legal services for Sentinel.

Defendant Jennings Strouss moves to dismiss with a "speaking" motion filed pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. Plaintiff opposes the motion and separately moves to strike specified portions of Jennings Strouss' motion which assertedly refer to settlement negotiations. Plaintiff also requests sanctions under Rule 11 of the Federal Rules of Civil Procedure against both Jennings Strouss and its attorneys for disclosure of settlement negotiations.

Defendants Blasdell, Charles, Corbin, Eaton, Hazelett, Lynch, Refsnes, and Was, members of Sentinel's Board of Directors (the "director defendants"),[1] also respond to the motion to dismiss for the asserted purposes of (1) reserving objections to alleged factual misstatements regarding the business relationship between Sentinel and Jennings Strouss, and (2) describing to the court the continuing role that Jennings Strouss will play in this litigation even if the court grants' the motion to dismiss. Specifically, the director defendants assert that they may sue defendant Jennings Strouss for contribution or indemnity on various theories including professional malpractice or negligence, breach of implied contract, and conflict of interest.

Defendant Jennings Strouss moves to strike the director defendants' response on the grounds that the director defendants are not "adverse" to defendant Jennings Strouss and thus not permitted to respond under applicable procedural rules. Defendant Jennings Strouss further asserts that the director defendants failed to comply with Local Rule 11.

In this order, the court addresses the above referenced motions. The court additionally addresses two motions for more definite statements filed separately by the director defendants and defendants Frank B. and Juanita Campbell (the Campbell defendants). Plaintiff filed a response which according to counsel addresses both of these motions.

The court heard oral argument on all of the above motions and now rules.

## I. BACKGROUND INFORMATION

### A. *Relationship between Sentinel and Jennings Strouss*

During 1984 and 1985, Jennings Strouss performed legal services for Sentinel during the formation of Sentinel. (Def.'s SOF ¶ 4; Pl.'s SOF ¶ 4, 48.)[2] After formation, Jennings Strouss continued to provide legal services to Sentinel. Plaintiff asserts, and Jennings Strouss does not dispute,[3] that these services included, among others, the preparation of standardized loan forms, performing work on nine of the eleven loans targeted in this action, rendering advice on the duties and liabilities of directors and officers of financial institutions, rendering advice or opinions on regulatory matters, and working on a public offering of Sentinel stock. (Pl.'s SOF ¶ 52.) Over a five year period of time, Jennings Strouss received legal fees in excess of $1 million from Sentinel. (Pl.'s SOF ¶ 53, Def.'s Supp. SOF ¶ 53.)

In February of 1990, the Office of Thrift Supervision declared Sentinel insolvent, closed Sentinel, and appointed the RTC as

---

**1.** Frank B. Campbell, another former member of Sentinel's Board of Directors, is represented by counsel different from the director defendants and does not respond to Jennings Strouss' motion to dismiss.

**2.** In this order, the court refers to Jennings Strouss' initial statement of facts as "Def.'s SOF," to the RTC's initial statement of facts as "Pl.'s SOF," and to Jennings Strouss' supplemental statement of facts as "Def.'s Supp. SOF."

**3.** While defendant Jennings Strouss asserts that this information is irrelevant, it does not dispute the factual veracity of this information.

receiver of Sentinel for the purpose of liquidation. (Complaint ¶ 9, Motion to Dismiss at 2.) In a letter dated February 15, 1991, the RTC demanded access to Jennings Strouss' files related to Sentinel. (Def.'s SOF ¶ 20.) The RTC reviewed these files and in December of 1991, the United States indicted David A. Dennerline, president of Sentinel, Michael Joseph Dickes, loan officer of Sentinel, and Donald M. Switzenberg, a borrower, for bribery, conspiracy, misapplication of funds, filing false statements, and related criminal offenses. (Def.'s SOF ¶¶ 21, 22.)

Also in December of 1991, the RTC wrote demand letters to each of Sentinels' former outside directors. (Def.'s SOF ¶ 23.) The directors engaged Jennings Strouss to defend them against the RTC and for about a year Jennings Strouss represented the directors in their negotiations with the RTC. (Def.'s SOF ¶¶ 24, 25.) These negotiations proved unsuccessful and the RTC filed this action against the former directors on January 29, 1993.

### B. *Involvement of Specific Attorneys from Jennings Strouss with Sentinel*

Defendant Frank B. Campbell was a Sentinel shareholder, incorporator, and Board member from the time of Sentinel's formation until 1987. (Def.'s SOF ¶¶ 13, 15, 16.) Mr. Campbell held Sentinel stock for his own personal account and retained all fees paid for his Board services. (Def.'s SOF ¶¶ 15, 18.)

During that time, Mr. Campbell also was a partner at Jennings Strouss until he retired from full time practice in January, 1988. (Def.'s SOF ¶ 12.) During the formation of Sentinel, Mr. Campbell performed legal services for Sentinel which were billed to Sentinel at an hourly rate. (Def.'s SOF ¶ 14.) All of the parties dispute the extent of other legal services provided by Mr. Campbell to Sentinel either informally or during formal Board meetings.

Lee Esch, another partner at Jennings Strouss, also performed some legal services for Sentinel. Among other services, Mr. Esch attended some Board and committee meetings at Sentinel after Mr. Campbell left in 1988 and met with federal regulators on two occasions in 1986 and 1988. (Pl.'s SOF ¶ 57; Def.'s SOF ¶ 3.) As with Mr. Campbell, the parties dispute the scope of legal services provided by Mr. Esch. Two associates of Jennings Strouss, Cynthia Griffin and Russell Brown also performed loan related work for Sentinel. (Pl.'s SOF ¶ 56.)

### C. *Pre–Complaint Communications between the RTC, Defendant Directors, and Jennings Strouss*

On December 24, 1991, over one year before filing this action, the RTC sent demand letters to the former Sentinel directors, who then retained Jennings Strouss. The RTC did not send a similar letter to Jennings Strouss. On July 16, 1992, the RTC sent a letter to Jennings Strouss regarding the RTC's demand against the former directors, in which the RTC raised for the first time the issue of a conflict of interest by Jennings Strouss:

> Your firm's position is also surprising, since an early settlement will avoid the inevitable conflict of interest and disqualification issues that will certainly be raised if you appear as counsel in the litigation.

(Def.'s SOF ¶ 26.) Jennings Strouss responded to this letter requesting specific information regarding the alleged conflict of interest, to which the RTC did not respond. (Def.'s SOF ¶ 27.)

On December 3, 1992, on behalf of the former directors, Jennings Strouss sent a letter to the RTC which included a settlement offer. (Def.'s SOF ¶ 29.) The RTC responded on December 23, 1992, with two letters to Jennings Strouss. One letter contained another settlement offer. The other letter asserted that "the RTC believes it may have one or more claims against [Jennings Strouss] arising from legal services performed for Sentinel" and requested the execution of an agreement tolling for six months the statute of limitations for filing any claims against Jennings Strouss. (Def.'s SOF ¶ 31.) Jennings Strouss refused to execute the tolling agreement.

On January 29, 1993, counsel for the RTC met with several attorneys at Jennings Strouss. Jennings Strouss asserts, and

plaintiff does not dispute,[4] that at this meeting the RTC presented two complaints: one which included Jennings Strouss as a defendant and one which did not. (Def.'s SOF ¶ 35.) Plaintiff further does not dispute the assertions by Jennings Strouss that at that meeting the RTC again requested a tolling agreement, "threatened" Jennings Strouss with a lawsuit and adverse publicity if they refused to grant the tolling agreement, and stated that it needed more time to determine whether a suit should be filed against Jennings Strouss. (Def.'s SOF ¶¶ 37, 38.) Jennings Strouss again refused to execute the requested blanket tolling agreement and the RTC filed the instant complaint which names Jennings Strouss as a defendant.

### D. *Complaint*

In its complaint, the RTC alleges four claims against the former directors and officers of Sentinel for negligence, negligence per se, gross negligence, and breach of fiduciary duty. The RTC also alleges Jennings Strouss acted as Sentinel's *de facto* general counsel and had a fiduciary duty to Sentinel, which included the following duties:

(a) To utilize the skill, prudence and diligence that lawyers of ordinary skill and knowledge commonly possess;

(b) To act in a reasonably careful manner in light of special professional knowledge;

(c) To independently investigate the facts underlying Sentinel's loan transactions to ensure that the client's interests were adequately protected;

(d) To disclose to Sentinel's Board of Directors any and all knowledge of a conflict of interest between the corporate entity and an individual acting on its behalf; and,

(e) To disclose to Sentinel's Board of Directors any and all knowledge of potentially harmful facts.

(Complaint ¶ 58.) The RTC alleges that Jennings Strouss breached these duties by "negligently fail[ing] to investigate the facts underlying Sentinel's loan transactions despite reasonable cause to do so," and "never report[ing] loan improprieties or loan policy violations to Sentinel's Board of Directors or to regulatory authorities." (Complaint ¶ 59(d-e).)

To support its claims against Jennings Strouss, plaintiff provides one factual example which involves a loan by Sentinel to Indian School II Partners which allegedly violated "Loans to One Borrower" regulations (the "Indian School transaction").[5] (Complaint ¶ 61.) Plaintiff alleges that through its work documenting this loan, Jennings Strouss either knew or should have known that the loan was structured to avoid compliance with the Loans to One Borrower regulations and thus had a duty to advise Sentinel's Board of Directors regarding the improprieties of this loan before closing.

## II. ANALYSIS

### A. *Plaintiff RTC's Motion to Strike and Request for Sanctions*

Plaintiff RTC moves the court to strike fourteen paragraphs from Jennings Strouss' statement of facts and supporting evidence, some of which the court refers to in the previous subsection captioned "Pre–Complaint Communications Between the RTC, Defendant Directors, and Jennings Strouss." The RTC argues that Rule 56(e) of the Federal Rules of Civil Procedure prohibits Jennings Strouss from offering this evidence because it is inadmissible.

The RTC argues that the disputed statements and evidence concern settlement negotiations between the RTC and the director defendants and are prohibited by Rule 408 of the Federal Rules of Evidence. The RTC further argues that the court should strike these statements and evidence as inadmissible because they are irrelevant and highly prejudicial. Finally, the RTC requests the court to impose sanctions under Rule 11 of the Federal Rules of Civil Procedure for this alleged misconduct by ordering Jennings

---

4. Plaintiff asserts that these facts are immaterial and irrelevant, but does not dispute the factual veracity of them.

5. In its complaint, the RTC asserts that it "expressly reserves the right to add to this example and to identify other examples." (Complaint ¶ 61.)

Strouss and its attorneys to pay the RTC its expenses incurred in filing this motion.

### 1. Federal Rule of Evidence 408

■ Rule 408 of the Federal Rules of Evidence addresses the admissibility of evidence concerning settlement negotiations and provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.... This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed.R.Evid. 408.

The RTC asserts that representatives for the RTC understood that all conduct and statements made by participants of the January 29, 1993 meeting in pursuit of settlement were privileged. The RTC further presents the affidavit of Jonathon Cook, an RTC representative, who attests that at a smaller meeting with Jennings Strouss representatives that day, he specifically stated his "understanding that all discussions were confidential" and that he received no contrary indications from the Jennings Strouss representatives.

Jennings Strouss responds that the RTC filed this lawsuit for retaliatory purposes because Jennings Strouss' clients would not settle on terms offered by the RTC and because Jennings Strouss would not sign a tolling agreement. Thus, Jennings Strouss argues that it offers the disputed evidence to show this improper motive rather than to prove liability on the claim and thus is not prohibited by Rule 408.

Jennings Strouss next argues that the meeting on January 29, 1993 did not encompass settlement discussions, but rather demands and threats of litigation by the RTC. Contrary to assertions by the RTC and the affidavit of Mr. Cook, four Jennings Strouss representatives attest that no one at the January 29, 1993 meeting said anything about settlement, confidentiality, or privilege.

Jennings Strouss clearly did not introduce this evidence to prove liability, but rather to reveal to the court what it perceives as the RTC's improper retaliatory motive for filing this action against Jennings Strouss. Because this evidence was presented to prove motive rather than liability, Rule 408 does not render it inadmissible.

### 2. Relevance of Statements and Supporting Evidence

■ The RTC argues that the motion to dismiss addresses the issue of whether Jennings Strouss breached any fiduciary duty or negligently performed any duties by failing to adequately recognize, investigate, and disclose damaging facts regarding Sentinel loan transactions. Plaintiff RTC argues that none of the statements or evidence regarding pre-complaint negotiations between the RTC and the director defendants is relevant to that issue.

The RTC further notes that Jennings Strouss fails to refer to any of the disputed statements or evidence in the argument section of its motion to dismiss. Thus, the RTC argues that this evidence is not admissible under Federal Rule of Evidence 402.

Jennings Strouss argues that this evidence is relevant to the issue of the RTC's retaliatory motives in filing this action against it. Jennings Strouss further asserts that in retrospect rather than merely reciting these facts in a motion to dismiss, they perhaps should have filed a Rule 11 motion, affirmatively attacking the RTC's lawyers. Plaintiff RTC replies that its complaint is not frivolous and that Jennings Strouss has not filed a Rule 11 motion.

In its motion to dismiss, Jennings Strouss argues that it had no duty to independently investigate the facts underlying Sentinel's loan transactions or to report loan improprieties to Sentinel's Board of Directors and the

regulatory authorities. According to Jennings Strouss, to perform the duties alleged by plaintiff in its complaint would have required Jennings Strouss to perform work outside the scope of its representation within which it was ethically bound to act. Jennings Strouss further argues that it did nothing wrong with respect to the Indian School loan transaction.

Nothing in Jennings Strouss' dismissal argument refers to the disputed pre-complaint communications among the RTC, director defendants, and Jennings Strouss or to the RTC's alleged retaliatory motive in filing this action. While these communications and improper motive may have been relevant to a Rule 11 motion filed by Jennings Strouss, Jennings Strouss chose to assert a speaking motion to dismiss under Rule 12(b)(6) instead of a Rule 11 motion. The court finds no relevance in the disputed evidence to the legal arguments regarding lack of duty presented by Jennings Strouss in its motion to dismiss. Accordingly, the court strikes the disputed evidence and statements as irrelevant.

### 3. Request for Sanctions Under Rule 11

■ Plaintiff asserts that the motion to dismiss is "saturated with privileged evidence in blatant disregard of F.R.E. 408," and that Jennings Strouss offered the disputed evidence solely in an attempt to prejudice the court against the RTC. Based on that conduct, plaintiff contends that this court should impose sanctions under Rule 11 of the Federal Rules of Civil Procedure for this conduct.

Rule 11 requires either a party or an attorney to sign every pleading, motion, or other paper and provides that this signature constitutes a certificate that the signer has read the document and that

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

■ Plaintiff does not assert that the motion to dismiss is frivolous and not grounded in fact or warranted by existing law. Plaintiff only argues that defendant Jennings Strouss included certain irrelevant, prejudicial, and inadmissible evidence in the motion for the purpose of prejudicing the court against the RTC. In certain circumstances, however, a court may sanction a party under Rule 11 for filing a motion for an improper purpose, even when that motion is objectively reasonable and not frivolous. *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1475–76 (9th Cir.1988) (non-frivolous motion filed as part of a pattern of abusive litigation activity may violate Rule 11). Plaintiff does not assert that the motion is part of a pattern of abusive litigation activity, nor does it assert that defendant filed the motion for an improper purpose. Rather, plaintiff asserts that defendant incorporated certain evidence in the motion for an improper purpose.

Plaintiff provides the court with no authority to support its position that this court has authority to impose sanctions under Rule 11 for a motion which is objectively reasonable and non-frivolous and is filed at least in part for the legitimate purpose of seeking dismissal in this case, merely because the motion includes certain evidence which is assertedly presented for an improper purpose. Neither is the court aware of any such legal authority. Moreover, no pattern of abusive litigation activity has been demonstrated. Accordingly, the court denies plaintiff's request for sanctions under Rule 11.

### B. Defendant Jennings Strouss' Motion to Strike Defendant Directors' Response to Jennings, Strouss & Salmon's Speaking Motion to Dismiss

On June 10, 1993, two days after plaintiff RTC filed its response, the director defendants filed a fourteen page response to the motion to dismiss. Attached to the response are (1) portions of the depositions of James A. Blasdell, a former Sentinel director, and Lee Esch, a partner at Jennings Strouss, and

(2) the affidavit of William G. Was, former Chairman of Sentinel's Board of Directors. Also attached are five exhibits totalling about 85 pages.

In their response, the director defendants assert that Jennings Strouss was not a mere scrivener for Sentinel, but had an all encompassing relationship with Sentinel and its Board and that the director defendants looked to Jennings Strouss as their and Sentinel's general counsel. The director defendants argue that under Arizona's business judgment rule they had a right to rely on Jennings Strouss' legal advice. The director defendants further argue that legal bases exist for them to assert claims against Jennings Strouss for contribution, indemnification, breach of contract, and professional negligence.

Defendant Jennings Strouss moves to strike the director defendants' response on the grounds that the director defendants are not an adverse party under Rule 56 of the Federal Rules of Civil Procedure and therefore have no standing to respond[6] and that the response is not timely under Local Rule 11($l$)(1). In their reply, defendant Jennings Strouss further argues that the response fails to comply with Local Rule 11($l$)'s requirement that an opposing party file a separate statement of facts.

The director defendants object to Jennings Strouss' motion to strike and assert that they filed their response to the motion to dismiss in order to correct misstatements and preserve their objections on the record. The director defendants argue that the motion to strike is procedurally improper because Rule 12(f) applies only to pleadings, not responses. The director defendants next argue that their interests are adverse to those of Jennings Strouss.

Regarding the timeliness of their response under Local Rule 11, the director defendants assert that the RTC initially had suggested that some of the director defendants sign affidavits in lieu of taking their depositions for the motion to dismiss. Counsel for the director defendants asserts that he had informed counsel for Jennings Strouss that he intended to submit these affidavits under separate cover on the same day that the RTC filed its response. According to the director defendants, the RTC subsequently chose not to draft the proposed affidavits, so the director defendants filed their own response and affidavits instead.

■ First, the director defendants correctly state that Rule 12(f) does not authorize this court to strike documents other than pleadings. Second, while the director defendants have no claims against Jennings Strouss at issue in the motion to dismiss, the director defendants clearly have interests that are adverse to those of Jennings Strouss. Accordingly, the director defendants do have standing to respond to the motion to dismiss.

■ Local Rule 11($l$)(2) requires a responding party to submit their response within thirty days after service of the motion, unless otherwise ordered by the court. The director defendants filed their response on June 10, almost three months after Jennings Strouss filed their speaking motion to dismiss. The court did not issue any order addressing the time within which the director defendants must file their response.

The director defendants argue that their response should be considered timely because counsel for Jennings Strouss was informed that the director defendants intended to separately file affidavits on the same day that plaintiff's response was due. This argument fails for two reasons. First, even if counsel had reached an agreement regarding the filing of affidavits, this agreement does not suffice as a court order as required under Local Rule 11. *See* Local Rule 39. Second, the substance of the alleged filing agreement concerned affidavits, not a separate response. The court also notes that the director defendants failed to submit a controverting statement of facts with their response as required by Local Rule 11($l$)(1).

---

6. If, as argued by Jennings Strouss, the director defendants have no standing to respond to this motion, then fairness would dictate that any facts or issues resolved during this motion would not be binding on the director defendants.

It also appears to the court, however, that part of the cause for the defendant director's untimely filing may have resulted from a belated decision by the RTC to not draft the affidavits of the director defendants. Thus, in fairness, the court will grant the motion to strike and will not consider the director defendants' response for the purpose of determining Jennings' Strouss motion to dismiss. For future purposes, however, the court will consider the director defendants' response for the purpose of preserving the arguments presented in it.

## C. Defendant Jennings, Strouss & Salmon's "Speaking" Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12 and 56

The RTC contends that Jennings Strouss played a pervasive role in the legal affairs of Sentinel and in essence was general counsel for Sentinel. With respect to the Indian School transaction, the RTC asserts that Jennings Strouss was aware of significant information which revealed that the proposed transaction violated the Rule. The RTC argues that under circumstances like these, where attorneys provide broad representation to a financial institution and possess significant information relating to that representation, the attorneys have a duty to investigate and advise the financial institution regarding regulatory violations.[7]

Jennings Strouss asserts that it was ethically bound to act within the scope of its representation, which was merely to prepare loan documents for loans previously negotiated by Sentinel and with terms provided to Jennings Strouss by Sentinel. According to Jennings Strouss, performing the duties alleged by plaintiff would have forced Jennings Strouss to improperly exceed the scope of its engagement with Sentinel. Jennings Strouss further asserts that clients may hire lawyers for specific duties, that lawyers have no duty to investigate matters for which the client assumes responsibility, and that lawyers have no duty to turn their clients over to federal regulators for improper lending purposes.

With respect to the Indian School transaction, Jennings Strouss argues that it did nothing wrong because Sentinel only asked Jennings Strouss to document the loan and did not "instruct, pay, authorize, or give Jennings Strouss information sufficient to determine whether Sentinel had complied with the loans to one borrower regulations with regard to the borrower or some potential assignee." (Def.'s Motion at 21.)

Jennings Strouss presents evidence that it had correctly advised Sentinel regarding the Loans to One Borrower regulations and that Sentinel chose to handle implementation of these regulations in-house. In light of these facts, Jennings Strouss argues that the RTC's evidence regarding the "all-encompassing" legal duties of Jennings Strouss to Sentinel are not relevant and do not controvert the essential facts. Jennings Strouss further argues that any claim based on the knowledge of Mr. Campbell imputed to Jennings Strouss also fails because Mr. Campbell did not attend the credit committee meeting which approved the Indian School transaction.

Finally, defendant Jennings Strouss argues that the court should dismiss outright under Rule 56 of the Federal Rules of Civil Procedure all claims against Jennings Strouss other than the Indian School transaction because plaintiff fails to set forth any specific facts or evidence regarding other transactions.

### 1. Claims Other than the Indian School Transaction

As requested by Jennings Strouss, the court will summarily dismiss all claims asserted by the RTC against Jennings Strouss other than the Indian School Transaction. Under Federal Rule of Civil Procedure 12(b), the court treats this "speaking" motion to dismiss as one for summary judgment. To grant summary judgment, the court must hold that the record clearly established "no genuine issue as to any material fact and that

7. In its complaint, the RTC also alleges that Jennings Strouss had a duty to advise the appropriate regulators regarding regulatory violations.

In its response to the motion to dismiss, the RTC apparently abandons this allegation.

the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party may discharge this burden by revealing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a motion for summary judgment cannot rest upon mere allegations or denials of the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986).

■ In the absence of specific facts regarding Jennings Strouss' alleged misconduct in other transactions, none of which are provided by the RTC, this court cannot determine whether a duty regarding that conduct existed by virtue of either the scope of Jennings Strouss' representation of Sentinel or the possession of significant information regarding that representation. Accordingly, the court summarily dismisses all claims alleged by the RTC against Jennings Strouss which are based on unspecified loan transactions.[8]

### 2. Existence of Duties to Investigate and Advise

■ The issue before the court is whether, by virtue of Jennings Strouss' scope of representation of Sentinel or the possession of significant information, it had duties to investigate and advise Sentinel regarding the possibility that the proposed Indian School transaction might violate Loans to One Borrower regulations.[9]

#### i. Scope of Representation

The parties do not dispute that Jennings Strouss performed a variety of legal work for

Sentinel, beginning with work related to the formation of Sentinel. In fact, the RTC asserts, and Jennings Strouss does not dispute, that with the exception of several small firms hired by Sentinel's president in connection with minor matters, Jennings Strouss was the only law firm used by Sentinel from 1983 until 1989. The parties also do not dispute that during that time, Jennings Strouss

> prepared standardized loan forms for Sentinel, advised Sentinel regarding the duties and liabilities of directors and officers of financial institutions, represented Sentinel on 9 of the 11 loans which are the target of RTC's Complaint in this action, prepared proxy statements for Sentinel, worked on a subsequent public offering of Sentinel stock, advised Sentinel regarding potential expansion in California, represented Sentinel in loan workouts and foreclosures, represented Sentinel in other types of litigation, and advised Sentinel regarding a variety of regulatory issues and interfaced with the regulators on Sentinel's behalf.

(Pl.'s SOF ¶ 52.) During a five year period, Sentinel paid Jennings Strouss in excess of $1 million for legal fees.

Jennings Strouss also performed "regulatory" work for Sentinel, including attending at least two meetings with federal regulators, rendering advice, and modifying forms to conform with changed regulations. (Pl.'s SOF ¶¶ 57–59.) Finally, in 1989, Sentinel hired another law firm to represent Sentinel in connection with regulatory matters, and Mr. Esch acted as liaison between the law firm and Sentinel. (Pl.'s SOF ¶ 51.)

The RTC also presents the testimony of a Sentinel Board member, Mr. Blasdell, who perceived the role of both Frank Campbell and Lee Esch, partners of Jennings Strouss, as managers of Sentinel's legal affairs. Jen-

---

**8.** In its complaint, plaintiff attempts to reserve the right to present additional examples of breaches of duty by Jennings Strouss. (Complaint ¶ 61.) While this practice likely would not survive a motion to strike, *see FDIC v. Wise*, 758 F.Supp. 1414, 1420 (D.Colo.1991), it certainly cannot survive a speaking motion to dismiss.

**9.** The Loans to One Borrower regulation at issue in this action was codified at 12 C.F.R. § 563.9–3 and provides in part:

> No insured institution shall make any loan to one borrower if the sum of (i) the amount of such loan and (ii) the total balances of all outstanding loans owed to such institution and its service corporation affiliates by such borrower exceeds an amount equal to ten percent of such institution's withdrawable accounts or an amount equal to such institution's regulatory capital, whichever amount is less.

12 C.F.R. § 563.9–3(b) (1987).

nings Strouss notes that management, and not the Board, made the work assignments to Jennings Strouss, that Mr. Blasdell was not involved in management, and that Mr. Blasdell did not know whether management had requested Jennings Strouss to handle compliance with the Loans to One Borrower regulations.[10]

Jennings Strouss presents evidence that when requested by Sentinel in 1984 for information regarding the Loans to One Borrower regulations, Jennings Strouss sent a letter to Sentinel which correctly summarized the regulations and attached a copy of the regulations. (Def.'s Reply, exhibit D.) Jennings Strouss also presents evidence that when the Loans to One Borrower regulations changed, Jennings Strouss altered Sentinel Loans to One Borrower form to reflect these changes. (Def.'s Reply, exhibit 3.)

The parties do not dispute, however, that Sentinel also employed in-house personnel who communicated with federal regulators. (Def.'s SOF ¶ 10.) Jennings Strouss presents the affidavit of Bert K. Oster, who started working for Sentinel in April 1987 as Assistant Vice President of Commercial Real Estate Lending, and was promoted to Vice President of Commercial Real Estate Lending in 1988.[11] (Def.'s Reply.) Mr. Oster attests that throughout his employment, Sentinel maintained in-house procedures to implement the Loans to One Borrower regulations. Mr. Oster further attested that Sentinel did not consider application of the Loans to One Borrower regulations to specific loans to be legal services and did not delegate the performance of necessary calculations to its attorneys.

Finally, Jennings Strouss presents evidence which indicates that its role in documenting loans would not begin until after Sentinel had negotiated the loan. (Def.'s SOF ¶ 8.) According to attorneys for Jennings Strouss, Sentinel would contact a Jennings Strouss lawyer, supply the terms of the loan and ask the lawyer to draft necessary

documents. (Def.'s SOF ¶ 8.) The lawyer would draft the documents and transmit them to Sentinel but was not involved in the execution or closing of the loan. (Def.'s SOF ¶ 8.)

The parties do not dispute that Sentinel did not request, pay, authorize, or give Jennings Strouss relevant information to determine whether any borrower exceeded the Loans to One Borrower limits. (Def.'s SOF ¶ 8.) Finally, Sentinel never requested, paid, or authorized Jennings Strouss to audit Sentinel's regulatory compliance or borrower suitability. (Def.'s SOF ¶ 11.)

ii.   The Indian School Transaction

In May of 1987, Indian School II Partners applied to Sentinel for a $2,130,000 loan. (Pl.'s SOF ¶ 77.) Jennings Strouss did not participate in negotiation of this loan. (Def.'s SOF ¶ 40.) An associate attorney for Jennings Strouss, Cynthia Griffin, however did document the loan. (Def.'s SOF ¶ 42.)

Ms. Griffin attests that she received a hand-written set of basic loan transaction terms, which she believes originated with Sentinel. (Affidavit of Mary Cynthia Griffin, attached to Def.'s Reply to Motion to Dismiss) ("Griffin Affidavit"). Ms. Griffin attests that she supplemented these terms based on additional oral instructions that she received from Susan Jacob, a Sentinel loan officer. Ms. Griffin further testified that she received a call from borrower's counsel, requesting her to modify the loan documents to permit a transfer of the real property collateral for the loan to Indian School II Joint Venture. (*Id.;* Pl.'s SOF ¶ 84.) Ms. Griffin recalls that she contacted Ms. Jacob, who instructed her to comply with this request. (Griffin Affidavit.)

Sentinel did not request Ms. Griffin to document any transfer. (Def.'s SOF ¶ 44.) Furthermore, neither Ms. Griffin nor Mr. Esch ever learned whether the property was transferred from Indian School II Partners to Indian School II Joint Venture. (Def.'s Supp. SOF ¶ 44.)

---

**10.**   The court considers the testimony of Mr. Blasdell to reflect only his impressions, not those of other Board members, and not those of management who engaged the services of Jennings Strouss.

**11.**   The disputed Indian School transaction closed on May 29, 1987.

In fact, after closing and as permitted by the loan document, Indian School II Partners transferred the title to the subject property to Indian School II Joint Venture, which consisted of the general partners of Indian School II Partners and Miken Development. (Pl.'s SOF ¶ 79.) Miken Development was owned by Frank Skinner and Michael McGarey. (Pl.'s SOF ¶ 79.)

Both Messrs. Skinner and McGarey had secured previous loans from Sentinel. (Def.'s SOF ¶¶ 69–76.) In fact, Ms. Griffin had worked on two of these loans in the same month that she documented the Indian School II loan. (Def.'s SOF ¶ 74.) Plaintiff asserts that had the $2,130,000 loan been made directly to Indian School II Joint Ventures, The loan would have violated the Loans to One Borrower regulations because at that time (1) Mr. Skinner had an outstanding Sentinel loan balance of $3,930,000 and Mr. McGarey had an outstanding balance of $4,950,000, and (2) during May, 1987, Sentinel's legal lending limit ranged from $5,821,525 to $6,003,163. (Pl.'s SOF ¶ 80.)

Jennings Strouss, however, did not consider a possible transfer to be unusual or suspicious and in the loan submission report prepared with the loan and relied upon by Sentinel's credit committee in approving the loan did not indicate that the property was to be transferred to Indian School II Joint Ventures. (Pl.'s SOF ¶ 43; Def.'s SOF ¶ 88.) Ms. Griffin attests that at the time she documented the Indian School transaction, she was aware that Sentinel had an in-house procedure for implementing the Loans To One Borrower regulations and had no reason to believe that Sentinel would not properly implement the Rule on the Indian School II transaction. (Def.'s Supp. SOF ¶ 43.). Moreover, there is no showing that she was even aware of Sentinel's legal lending limit at the time.

Plaintiff argues that based on the "irregularities" of the transfer in the Indian School transaction, Jennings Strouss either knew or should have known that the loan was being structured in a way to avoid compliance with the Loans to One Borrower regulations. Plaintiff supports this conclusion with the affidavits of James H. Patterson and John F. Davis. Messrs. Patterson and Davis are attorneys experienced with loan transactions and familiar with applicable regulations.

Both Messrs. Patterson and Davis attest that after a review of the record,[12] it is their opinions that Jennings Strouss knew or should have known that the Indian School II loan was being structured in a non-standard or suspicious manner. Mr. Patterson further attests that Jennings Strouss knew or should have known that the purpose of the structure of the transaction could have been to avoid the Loans to One Borrower regulations. Both attorneys opine that Jennings Strouss owed professional and fiduciary duties to Sentinel to raise the irregularities with Sentinel management and/or Board members.

### iii. Legal Analysis

In support of its argument that a duty to investigate and advise exists under the facts of this case, the RTC refers the court to five cases: *FDIC v. O'Melveny & Meyers*, 969 F.2d 744 (9th Cir.1992); *In re American Continental Corp./Lincoln Savs. & Loan Sec. Litig.*, 794 F.Supp. 1424 (D.Ariz.1992); *FSLIC v. McGinnis, Juban, Bevan, Mullins & Patterson, P.C.*, 808 F.Supp. 1263 (E.D.La. 1992); *FDIC v. Wise*, 758 F.Supp. at 1414; *FDIC v. Clark*, 768 F.Supp. 1402 (D.Colo. 1989), *aff'd*, 978 F.2d 1541 (10th Cir.1992).

None of these cases, however, support plaintiff's position. First, *O'Melveny* is not directly applicable to the case at hand because it involved the duties of "attorneys retained to give advise and assistance with respect to public offerings." *O'Melveny*, 969 F.2d at 748. In holding that the attorneys owed a duty of care to the investors and the savings bank, the Ninth Circuit stated: "An important duty of *securities counsel* is to make a 'reasonable, independent investigation to detect and correct false or misleading

---

12. Jennings Strouss notes the review of the record by Messrs. Patterson and Davis did not include (1) the affidavit of Mr. Oster, who attested that at the time of the Indian School transaction, Sentinel had an in-house procedure for implementing the Loans to One Borrower Rule, or (2) the December 27, 1984 letter in which Mr. Esch correctly advised Sentinel about the Loans to One Borrower Rule.

materials.'" *Id.* at 749 (quoting *Felts v. Nat'l Account Sys. Ass'n, Inc.*, 469 F.Supp. 54, 67 (N.D.Miss.1978)).

Second, *American Continental* addressed the issue of a duty to advise when a law firm believes that its client is committing a regulatory violation. *American Continental,* 794 F.Supp. at 1453 ("Where a law firm *believes* the management of a corporate client *is* committing serious regulatory violations, the firm has an obligation to actively discuss the violative conduct. . . .") In the case at hand, the RTC presents the affidavits of two attorneys who speculate and opine that based on their review of the record, Jennings Strouss "knew or should have known" that the Indian School transaction might violate regulations. Plaintiff RTC, however, presents no evidence that Jennings Strouss actually believed that Sentinel might be violating regulations. Accordingly, *American Continental* provides no support for plaintiff's proposition that Jennings Strouss had a duty to advise because they had knowledge of certain facts which plaintiff asserts should have, but did not, make them suspicious that Sentinel was violating the Loans to One Borrower regulations. This is particularly true when but a single transaction is involved.

In fact, *American Continental* is most persuasive supporting the position of Jennings Strouss. There, the law firm had been engaged in perform "a major internal audit of Lincoln's FHLBB compliance and a major project to help Lincoln deal with the FHLBB's direct investment regulations." The law firm had hired as one of its lawyers the former director of FHLBB's Office of Examinations and Supervision who had previously written critically that Lincoln had "engaged in several serious regulatory violations." Thereafter, Shilling and another Jones Day lawyer flew to Phoenix to solicit American Continental's business. They succeeded and during their audit found a whole series of regulatory violations. The *American Continental* court also found that "Jones Day may have tacitly consented to the removal of harmful documents from Lincoln's files," they instructed American Continental on how to hide deficiencies from regulators and then destroy them, may have known that

American Continental was not following its compliance advice and participated in creating corporate resolutions to ratify forged and backdated corporate resolutions. Nothing approaching such egregious conduct is alleged here. A single documentation of a loan transaction cannot establish knowledge that a violation of the Loans to One Borrower occurred, nor even an assertion that somehow Jennings Strouss should have known of a potential violation of the Rule, much less a belief that it did.

Third, *McGinnis* is factually distinguishable from the case at hand because it involved the duties of a "closing attorney," as opposed to an attorney who was requested merely to document the loan and who had no involvement with the closing. *McGinnis,* 808 F.Supp. at 1268–69. More importantly, unlike the case at hand, *McGinnis* did not involve a situation where (1) the lending entity had established in-house procedures to implement the Loans to One Borrower regulations, and (2) the attorney was aware of the existence of the in-house procedures.

The *Wise* case similarly offers no support for the RTC's argument because, contrary to the RTC's characterization of that case, the *Wise* case involved a motion to dismiss rather than a motion for summary judgment. *Wise,* 758 F.Supp. at 1418–19.

Finally, the facts in *Clark* involved a law firm's duty to the bank after receiving allegations of fraud and gross negligence against the bank's president. *Clark,* 768 F.Supp. at 1406. Furthermore, in settling the suit against the bank, the law firm in *Clark* had received documents which had been altered or which otherwise failed to show the true status of loans and collateral. *Id.*

None of the cases cited by the RTC support its assertion that a duty to investigate and advise exists in this case; indeed *American Continental* establishes otherwise. On the contrary, it appears to the court that the scope of the attorney-client relationship between Jennings Strouss and Sentinel did not encompass a general duty to be continually vigilant for possible regulatory violations. Rather, the record reveals that Sentinel hired Jennings Strouss merely to document

the Indian School transaction with terms supplied or approved by a Sentinel employee.

First, the record includes no evidence of a written agreement between the parties that Jennings Strouss would assume the duty to monitor regulatory compliance with the Loans to One Borrower regulations with respect to either all loan transactions or the Indian School transaction. The record also includes no evidence of established practices of Sentinel or Jennings Strouss that would reveal the existence of an unwritten agreement for this purpose.

On the contrary, Sentinel had established in-house procedures for implementing the Loans to One Borrower regulations. Sentinel performed the necessary calculations in-house and did not provide necessary figures to Jennings Strouss to permit even a gross calculation.

The Jennings Strouss attorney who documented the Indian School transaction loan was aware of Sentinel's internal procedures at the time she documented the loan. She attested that she had no reason to believe that Sentinel was not complying with the in-house procedures. Nor does the record reveal that anyone at Jennings Strouss either knew or was suspicious that Sentinel might be violating the Loans to One Borrower regulations. Under these facts, the court does not find a duty as proposed by the RTC.

Furthermore, the affidavits of Messrs. Patterson and Davis do not alter this conclusion. The existence of a duty is a matter of law which the court must determine. *FDIC v. Clark*, 768 F.Supp. at 1407. Thus, the legal conclusion by these experts that Jennings Strouss had a duty to advise Sentinel that the Indian School transaction might violate the Loans to One Borrower regulations is not relevant to this court's analysis. Thus, the court grants Jennings Strouss' motion to dismiss. The court finds that there is no just reason for delay and direct entry of judgment.

### D. *Defendants' Motions for More Definite Statement*

The Campbell defendants and the director defendants separately move for more definite statements pursuant to Fed.R.Civ.P. 12(e). Both groups of defendants join in each other's motion. Plaintiff RTC opposes both motions in a combined response.

Defendants Campbell request the court to require plaintiff to provide a more definite complaint which (1) specifies acts or omissions by Mr. Campbell which allegedly violate duties owed, (2) specifies the alleged breaches of duties with respect to each transaction, and (3) provides a complete list of all transactions which provide a basis for this action.

Similarly, the director defendants argue that the RTC's allegations fail to provide adequate notice to each individual director because the RTC fails to plead the individual director's duties, the individual director's breaches, or the transactions involving each individual director with sufficient specificity to enable a response. Specifically, the director defendants assert that the RTC (1) fails to provide any allegations that differentiate between the three types of negligence alleged, (2) fails to plead specific facts to overcome the presumption that the directors are immune from tort liability under the best business judgment rule, (3) fails to plead specific allegations regarding gross negligence, and (4) fails to give adequate notice to the directors regarding the role of each individual director while acting on either the Board or a committee. The director defendants specifically argue that paragraph 57 of the complaint is ambiguous and fails to comply with Federal Rule of Civil Procedure 10(b).

Plaintiff responds that its complaint satisfies the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and that defendants are improperly attempting to compel discovery through this motion for a more definite statement.

#### 1. Complaint

Plaintiff's complaint is separated into broad categories, which include among others, duties, breaches, "unsafe or unsound transactions," and claims. Under the section on duties, plaintiff asserts that defendants owed a fiduciary duty to exercise the care that ordinary prudent persons in like posi-

tions would exercise. (Complaint ¶ 48.) Plaintiff then lists ten non-exclusive "examples" of duties encompassed by this general duty which do not refer to any specific defendant or transaction.[13] Plaintiff similarly structures its next section regarding breaches by providing a general statement regarding breach, and then listing eleven non-exclusive "examples" which are not tied to any duty, transaction, or defendant. (Complaint ¶ 49.)

Plaintiff's next section is captioned "unsafe or unsound transactions" and presents highly detailed facts regarding four loan transactions. (Complaint ¶¶ 51–56.) Plaintiff then lists seven additional "unsafe or unsound transactions." (Complaint ¶ 57.) Other than the name of the transaction and the alleged amount of money lost, plaintiff provides no information regarding these transactions.

Finally, in general terms which fail to identify any specific duties or transactions, plaintiff alleges claims for negligence, negligence per se, gross negligence, and breach of fiduciary duty against all of the director defendants.

### 2. Paragraph 51 of Complaint

■ In paragraph 51 of the complaint, plaintiff prefaces the section on "unsafe or unsound transactions" by reserving the right to identify other examples of unsafe and unsound transactions. While Federal Rule of Civil Procedure 8 does not require a plaintiff to set forth detailed facts regarding his or her claims, a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Clearly, plaintiff fails to give notice to defendants of grounds upon which its claim may rest when it "reserves" the right to allege new transactions. *RTC v. Hess*, 820 F.Supp. 1359, 1370 (D.Utah, 1993); *FDIC v. Wise*, 758 F.Supp. at 1414. Accordingly, plaintiff must submit a more definite statement regarding transactions not currently named in the complaint if it wishes to base any claims upon these transactions.

### 3. Paragraph 57 of the Complaint

In paragraph 57 of the complaint, plaintiff presents a list of seven "unsafe or unsound transactions," along with the amount of money allegedly lost as a result of the transaction. Defendants argue that plaintiff has alleged insufficient facts with respect to each of these seven transactions. Defendants further argue that paragraph 57 violates Federal Rules of Civil Procedure 10(b), which provides that "[e]ach claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth." Fed.R.Civ.P. 10(b).

■ Notice pleading does not require plaintiff to plead each transaction with the same amount of detail provided by plaintiff with respect to the Cave Creek, Citrus Plaza, Hampton Plaza, Indian School II Partners transactions. On the other hand, the mere name of the transaction plus an alleged amount of loss fails to provide fair notice to defendants of the grounds for plaintiff's claim. Accordingly, if plaintiff wishes to base any claims on the seven transactions listed in paragraph 57, it must provide the following additional information: (1) the date or dates of each transaction, (2) the identity of the persons or entities involved in each transaction, (3) a brief statement regarding the unsafe or unsound nature of the transaction, (4) and the identity of the defendants alleged to be involved in each transaction.[14] Any additional information regarding these transactions may be acquired by defendants through discovery.

■ Furthermore, to the extent that plaintiff wishes to assert a separate claim based on each transaction, Federal Rule of Civil Procedure 10(b) requires plaintiff to allege each claim in a separate count.

---

13. For example, the first "example" provides: "To conduct business in compliance with applicable state and federal laws and regulations." (Complaint ¶ 48(a).)

14. Similarly, plaintiff must identify which defendants allegedly were involved in the Cave Creek, Citrus Plaza, Hampton Plaza, and Indian School II Partners transactions.

### 4. Business Judgment Rule

■ Defendants argue that the RTC fails to plead facts to overcome the presumption under the Business Judgment Rule that, absent self-dealing, the directors exercised their best business judgment and are immune from tort liability. Because the RTC fails to plead any self-dealing by the directors, defendants argue that the RTC must plead specific allegations regarding how the directors grossly failed to exercise their best business judgment.

The RTC responds that defendants' arguments are not relevant because the court is dealing with a motion for more definite statement rather than a motion to dismiss. In any event, the RTC asserts that it has pled facts which overcome the presumption, including gross negligence. The RTC also argues that the directors may not avail themselves of the Business Judgment Rule because they failed to inform themselves of relevant and reasonably available information and abdicated their functions. Finally, the parties dispute whether under Arizona law the RTC may allege a claim against the former directors for simple negligence as opposed to gross negligence.

In its reply, the director defendants present three cases to support its position that the court should order plaintiff to file a more definite statement to overcome the best business judgment presumption: *Aronson v. Lewis,* 473 A.2d 805 (Del.Supr.1984); *Rabkin v. Philip A. Hunt Chemical Corp.,* 13 Del. J.Corp.L. 1210, 1987 WL 28436 (Del. Ch., Dec. 17, 1987); *RTC v. Bonner,* Civ. H–92–430, 1993 WL 414679 (S.D.Tex., June 4, 1993). None of these cases, however, address pleading requirements within the context of a motion for more definite statement. Rather, these courts address the effect of the business judgment rule on pleading requirements within the context of motions to dismiss.

■ Furthermore, none of these cases stand for the proposition that the existence of a defense based on the Business Judgment Rule triggers heightened pleading require-ments such as those required for fraud under Federal Rules of Civil Procedure 9(b). It may be that, in light of the Business Judgment Rule, plaintiff fails to state a claim.[15] The proper procedure to address that issue, however, is a motion to dismiss, not a motion for more definite statement.

IT IS ORDERED granting The Jennings, Strouss & Salmon "Speaking" Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12 and 56 (doc. 10). The Clerk of the Court is directed to enter judgment dismissing defendant Jennings, Strouss & Salmon from this action.

IT IS FURTHER ORDERED granting in part and denying in part the Motions for More Definite Statement filed by defendants Campbell and the director defendants (docs. 58, 59) as described in this order. Plaintiff is ordered to file within twenty (20) days after entry of this order either an Amended Complaint or a separate statement containing additional allegations as discussed in this order.

IT IS FURTHER ORDERED granting the Motion to Strike Defendant Directors' Response to Jennings, Strouss & Salmon's Speaking Motion to Dismiss (doc. 71) to the extent described in this order.

IT IS FINALLY ORDERED granting Plaintiff Resolution Trust Corporation's Motion to Strike (doc. 77–1) and denying its Request for Sanctions (doc. 77–2).

---

**15.** By asserting this possibility, this court does not suggest that plaintiff's claims fail in light of the Business Judgment Rule. Because a motion for more definite statement is not the appropriate procedural vehicle in which to raise this issue, the court does not reach the merits of the argument.